**Hayes HITE**

v.

**MARITIME OVERSEAS CORPORA-TION.**

**No. B–73–CA–354.**

United States District Court,
E. D. Texas,
Beaumont Division.
April 30, 1974.

———◆———

Harold J. Eisenman, Waldman & Smallwood, Beaumont, Tex., for plaintiff.

Ned Johnson, Benckenstein, Mc-Nicholas, Ball, Oxford, Radford & Johnson, Beaumont, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

STEGER, District Judge.

This is a suit brought by Hayes Hite, an employee of Southern Valve and Machine Works, Inc., for personal injury damages in an amount not to exceed $110,000.00. The defendant, Maritime Overseas Corporation, is the owner of the vessel upon which the plaintiff was working at the time of his injury on or about April 22, 1973. The plaintiff asserts in his complaint that he was a business invitee aboard the defendant's vessel and that the defendant, its master, officers and employees were guilty of various negligent acts which proximately caused his injuries. As a second ground, he contends that the SS OVERSEAS JOYCE, its appliances and equipment were unseaworthy, and that such unseaworthiness was a contributing cause of his injuries. Finally, he claims that the defendant violated various Safety and Health Regulations for Longshoring, and that such violations constituted negligence and/or unseaworthiness.

The defendant moves the Court to strike the plaintiff's allegations of unseaworthiness on the ground that the Longshoremen's and Harbor Workers' Compensation Act[1] as amended in 1972, (hereinafter referred to as "the Act"), "specifically excludes the remedy of unseaworthiness for those shore-based employees who perform longshore or ship repair work aboard a vessel in navigation." Additionally, Maritime Overseas moves the Court to strike those portions of the plaintiff's complaint which predicate the defendant's liability upon violations of "various Safety and Health Regulations for Ship Repairing." The plaintiff answered the defendant's contentions by saying that he is still entitled to the warranty of seaworthiness because the 1972 amendments to the Act exclude only those workers who are engaged in shipbuilding or repair services aboard the vessel and since the plaintiff was employed to clean "the tanks of this vessel in preparation for the changover of the said vessel from the hauling of petroleum products to the transportation of wheat," he was not involved in the covered activities.

The facts of the case may be briefly stated as follows:

The plaintiff testified in his deposition[2] that he was employed by Southern Valve & Machine Works, Inc. on April 22, 1973, the date of his inju-

---

1. 33 U.S.C.A. § 901 et seq.

2. The plaintiff's deposition was taken in a previous action styled Hayes Hite v. Nautilus Petroleum Carriers Corporation, No. B–

73–CA–207. This action was dismissed without prejudice on November 29, 1973, on the plaintiff's motion so that the correct defendant might be named.

ry. He, along with about 65 other employees of Southern Valve, were working aboard the SS OVERSEAS JOYCE, while the vessel was docked in Port Neches, Texas. The vessel was being converted from a petroleum carrier to a wheat carrier. The plaintiff was working in the number four cargo tank, cleaning rust from the walls of the tank with a hand scraper. He alleges that he received a shock when he proceeded to untie one of the lights that was being used to illuminate the tanks. This shock caused him to fall some 22 feet to the bottom of the tank, resulting in his injuries. Thereafter, the plaintiff filed a claim under the Act and was paid compensation for his lost time.

To pass upon the defendant's Motion to Strike, it will be necessary for the Court to review the 1972 Amendments to the Act.

### The 1972 Amendments

Significant changes were forthcoming through the passage of the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972.[3] Benefits were increased and the Act's coverage was extended to shoreside areas. In this regard, Section 2(c) provides that:

"(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (*including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel*)."[4] (Emphasis supplied)

Coverage was extended because Congress was concerned about the disparity in benefits payable to injured workers depending on the fortuitous circumstance of whether the injury occurred on land or over navigable water.[5]

The central question is whether the plaintiff is an "employee" under the amended Act. An "employee" includes "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker . . ."[6] One of the architects of the 1972 amendments, E. D. Vickery, summarized this section in a recent article:

"Any shipyard employee, who is actually engaged in the building or repairing of a vessel whether on navigable waters, a marine railway, drydock or other adjoining areas customarily used by an employer for such purposes, is now covered by the Act. The definitions cover only those shipyard employees directly engaged in the physical construction or repair of a vessel, including foremen, supervisors and persons handling parts, pieces and equipment adjacent to the vessel being repaired or built.

"Thus, coverage has not been extended to shipyard employees unless a part of their activities is directly involved in the physical building or repairing of a vessel on navigable waters, a drydock, a marine railway or a building way. For example, shipyard employees who are engaged ashore fabricating parts or pieces which are to be used by other shipyard employees in the physical building or repairing of a vessel are not covered. This would include those engaged in such jobs as building or fabrication of plates or other items which would be stockpiled or warehoused for use at a later date. Further, by legislative history, it appears clear that Congress did not intend to extend coverage to

---

3. 86 Stat. 1251 (1972).

4. 33 U.S.C.A. § 903 (1970), as amended (Supp.1974).

5. 3 U.S.Code Cong. & Admin.News, p. 4707 (1972).

6. 33 U.S.C.A. § 902(3) (1970), as amended, (Supp.1974).

purely clerical employees or employees engaged solely in moving parts, pieces or equipment to a storage or warehouse area for subsequent use in building or repairing a vessel." [7]

There can be little doubt that Hayes Hite is an employee covered under Section 2(3) of the Act. He was an employee engaged in maritime employment working aboard the defendant's vessel, while the vessel was undergoing a conversion enabling it to become a transporter of wheat. This work is in the nature of ship building or ship repairing. The Court is of the opinion that Congress intended that maritime employees such as the plaintiff come within the purview of the Act.

With the vast improvement in benefits and expanded coverage, the House Education and Labor Committee concluded that:

". . . it would be fairer to all concerned and fully consistent with the objective of protecting the health and safety of employees who work on board vessels for the liability of vessels as third parties to be predicated on negligence, rather than the no-fault concept of seaworthiness. This would place vessels in the same position, insofar as third party liability is concerned, as land-based third parties in non-maritime pursuits.

"The purpose of the amendments is to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore, insofar as bringing a third party damage action is concerned, and not to endow him with any special maritime theory of liability or cause of action under whatever judicial nomenclature it may be called, such as 'unseaworthiness,' 'non-delegable duty,' or the like.

"Persons to whom compensation is payable under the Act retain the right to recover damages for negligence against the vessel, but under these amendments they cannot bring a damage action under the judicially-enacted doctrine of unseaworthiness." [8]

Therefore, Section 5(b) of the Act was amended to reflect this change:

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter." [9]

As to employees covered under the Act, section 5(b) overrules a long line of decisions which extended the warranty of seaworthiness first recognized in *The Osceola*,[10] to longshore-

---

7. 41 Ins.Coun.J. 68 (1974).

8. 3 U.S.Code Cong. & Admin.News, p. 4703 (1972).

9. 33 U.S.C.A. § 905(b) (Supp.1974).

10. 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903).

men [11] and later to shore-based workers [12] such as the plaintiff. Further Section 5(b) eliminates the *Ryan* [13] action by the vessel owner against the stevedore or shipyard for breach of the warranty of workmanlike performance. The Court concludes that the plaintiff as an employee covered under the Act, is not entitled to a warranty of seaworthiness from the defendant.

As noted previously, the defendant additionally requests that the Court strike the plaintiff's allegations of negligence and unseaworthiness based upon "violations of various Safety and Health Regulations for Longshoring." Of course, for the reasons stated above, the claim basd upon the unseaworthiness of the vessel must be stricken.

■ Further, the plaintiff is not entitled to assert a negligence claim against the defendant based upon a violation of these regulations. These "Safety and Health Regulations for Longshoring" [14] apply only to the plaintiff's employer, Southern Valve and Machine Works, Inc., and not to the shipowner. The legislative history [15] to section 5(b) of the Act clearly demonstrates that Congress intended that the shipowner would not be held liable for claims predicated upon the negligence of the business invitee's employer or his co-workers.

## CONCLUSION

The Court is of the opinion, and does find that the defendant's Motion to Strike should be granted in its entirety.

It is, therefore, ordered, adjudged and decreed that defendant's Motion to

Strike plaintiff's allegations of unseaworthiness contained in plaintiff's First Amended Original Complaint, and those allegations of negligence based upon violations of various Safety and Health Regulations for Longshoremen be stricken from the plaintiff's First Amended Original Complaint.

11. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) (stevedore injured while working on ship in navigable waters); Gutierrez v. Waterman S. S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed. 2d 297 (1963) (stevedore injured on a pier); Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963) (warranty applicable although stevedore was employed by the shipowner).

12. Pope & Talbott, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); United Pilots Assn. v. Halecki, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959); West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959); Roper v. United States, 368 U.S. 20, 82 S.Ct. 5, 7 L.Ed.2d 1 (1961).

13. Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

14. See 33 U.S.C.A. § 941 (1970); 29 C.F.R. 1915.1 to 1922.1 et seq.

15. 3 U.S.Code Cong. & Admin.News, pp. 4703–4704 (1972).