Joseph **ANUSZEWSKI** and Ronald Gutowski to their own use and to the use of **Liberty Mutual Insurance Company**

v.

**DYNAMIC MARINERS CORP. PANAMA.**

Civ. No. 73–1220–K.

United States District Court,
D. Maryland.

March 13, 1975.

Bernard J. Sevel, Baltimore, Md., for plaintiff.

Eugene A. Edgett, Jr., Baltimore, Md., for use plaintiff.

Randall C. Coleman, Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

In this case which has been tried non-jury before this Court two plaintiffs seek damages resulting from injuries sustained by each of them while working as longshoremen aboard a vessel docked in the Baltimore, Maryland area. Their claims raise questions of the meaning and application of one of the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act. That amendment is set forth in 33 U.S. C. § 905(b).[1]

### FINDINGS OF FACT AND HOLDINGS

The accident in question occurred in the lower hold of the No. 1 hatch. The vessel arrived in Baltimore from New York after there discharging all cargo from the upper tween deck of No. 1 hatch. In the lower tween deck and the lower hold of No. 1 hatch was Baltimore cargo. A gang carrier and 23 men employed by the Nacirema Operating Co., Inc., a stevedoring company which had no connection with the prior discharge of cargo in the New York area from the upper tween deck of No. 1 hatch or from any other part of the vessel, came aboard the ship on February 17, 1973 at 8:00 a. m. and commenced work, including the removal of the hatch covers between the upper tween and the lower tween deck of No. 1 hatch. Later in the day of February 17, 1973, after the lower tween deck had been unloaded, the hatch cover between the lower tween deck and the lower hold of No. 1 hatch was removed by the longshoremen. The hatch cover over the lower tween deck, and the hatch cover between the lower tween deck and the lower hold and covering the latter, were each supported by four beams. The three aftermost beams below each such cover were removed by the gang after each such hatch cover was lifted during their work on February 17th, but the forward of the four beams below each such cover was left in place.

On February 17, 1973, the gang members discharged all of the cargo from the lower tween deck and some of the cargo from the lower hold. On February 18, 1973, they completed discharge from the lower hold. The plaintiffs were injured on February 18, 1973 during the unloading of the lower hold when the forward of the four beams, above the lower hold and which, when it was in place, supported the hatch cover over the lower hold, was dislodged by a cargo hook. That hook, during the discharge operation on February 18th, became caught under the beam, lifted the beam out of its socket and dropped it into the lower hold where it fell upon plaintiffs who were at work there.

When the gang removed the hatch covers over the lower tween deck and later over the lower hold, they found that all of the pins which held those eight beams in place were missing and that none of the eight beams was locked in place or otherwise secured by rope or other means. The lack of such locking or fastening of the beams over the lower tween deck was noted by and discussed among members of the gang when they removed the hatch cover over the lower tween deck about the time they commenced their work on February 17th. The foreman of the gang told its members to work and that the situation would be corrected. The men continued to work on February 17th and 18th but the situation was not corrected.

■ The weather on the two days was cold and there was not the maneuverability that would have existed on other than a cold day. However, the boom to which the hoist was attached could have been respotted at one or more times on February 17th and 18th to make it more probable that first one, and then two, of the eight beams would not be dislodged. While the evidence does not establish that respotting of the

---

1. That subsection, added to the Act by the 1972 amendments, is set forth in full *infra* in the body of this opinion.

boom would have necessarily avoided the accident, respotting might have decreased the chances of the accident occurring. Further, in any event the evidence does establish that there was room to place on the weather deck the two forward beams, which were under the hatches covering the lower tween deck and the lower hold, if those two beams had been removed as were the other two respective groups of three beams each. Further, the evidence additionally establishes that there was also available at a Nacirema supply office, within a half block of the spot at which the vessel was docked, rope and probably also nuts and bolts, which could have been used to fasten the two forward beams in place in lieu of their removal or in lieu of their being left in place without fastening. In sum, there was negligence on the part of Nacirema in not achieving rather easily a condition of safety. That failure would seemingly have been obviated (a) if Nacirema had provided, as it did not, a safety man aboard ship on February 17th and 18th and if that safety man had performed his job, and (b) even without the safety man, if the gang leader had obtained rope or some other items from the Nacirema supply office and secured the beams, or had required the fastening or the removal of even just the forward beam covering the lower hold of No. 1 hatch.

A crewman of the vessel who was present during the discharge described above for the purpose of preventing pilferage, as well as one or more other members of the ship's crew, was in a position to see that the beams were unfastened. However, there is no evidence that any crewman was at any time asked by anyone employed by Nacirema to correct the situation. There were on hand in a nearby chain locker of the ship items which could have been used to fasten the beams left in place, but no one requested that such items be utilized.

■ The appropriate practice while any cargo was being handled in a portion of a hatch below any beam of the type of the eight beams in question was to have such beam secured through the use of the pins for which each such beam was fitted, or to have such beam otherwise secured. The failure to secure the two beams during the unloading operation on February 17, 1973 and February 18, 1973 was in violation of section 1504.43(e) of the Safety and Health Regulations for Longshoring, 29 C.F.R. § 1918.43(e).[2] While the primary duty under that regulation to make certain that the beams left in place during the unloading operation was upon the stevedore,[3] the failure of the vessel to lock or fasten the beams constituted negligence on the part of the shipowner since the shipowner, at least in terms of knowledge of the crew member stationed to prevent pilferage, and in terms of those responsible for handling the ship from the time of its departure from New York, knew or should have known of the violation of the safety regulation. Provenza v. American Export Lines, Inc., 324 F.2d 660, 665 (4th Cir. 1963). But that negligence on the part of the ship is not actionable negligence in a post-1972 setting, for reasons which are discussed *infra*.

The longshoremen removed all of the unlocked beams except two. The presence of the forward beam left in place above the lower tween deck has not been proven by plaintiffs to have contributed to the accident, that is, there is no evidence that if the forward beam above the lower tween deck had not been in place, the boom would have been operated so as to have avoided the cargo hook

---

2. That regulation provides as follows:

(e) Any beam or pontoon left in place adjacent to a section through which cargo, dunnage, equipment, or other material is being worked, shall be lashed, locked, or otherwise secured so that it cannot be displaced by accident. All portable, manually handled hatch covers, including those bound together to make a larger cover, shall be removed from any working section.

3. *See* 33 U.S.C. §§ 902(3) and (4), 941(a); and 29 C.F.R. §§ 1918.2 and .3.

having become attached to the forward beam above the lower hold. By way of contrast, of course, it is clear that the accident would not have occurred except for the presence of the forward beam above the lower hold. But that presence could have been eliminated by removal or fastening of that beam by the stevedore on February 17th or before the accident on February 18th. Instead, the stevedore company negligently left that beam in place and unsecured.

The issue in this case is whether the ship's continuing failure up to and including the moment of the accident to take steps to correct the condition which existed after one or both of the forward beams was left in place and unsecured renders the ship liable to plaintiffs. Before the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, that condition itself would seemingly have constituted unseaworthiness. But unseaworthiness has been eliminated as a remedy for longshoremen by the addition in 1972 of what is presently codified as 33 U.S.C. § 905(b) of that Act. That subsection provides as follows:

> (b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

The applicable section of the Report of the House Committee on Education and Labor, No. 92–1441, 92d Cong., 2d Sess., prepared in connection with the 1972 amendments is set forth in 3 U.S.Code Cong. & Admin.News, pp. 4701–05 (1972), and is appended to this opinion.[4] It speaks clearly for itself, and establishes that land-based principles of law apply to longshoremen's claims for damages against third parties and that a ship has no different liability to longshoremen employed to work aboard it by a stevedoring company than the owner of land-based property owes to the employees of an independent contractor who perform work on that property. And the post-1972 amendment cases in the federal courts decided to date and involving longshoremen's claims against ships have adopted that approach.[5] Accordingly, a look at the established principles of negligence tort law is required. In that regard the House Committee Report, 3 U.S.Code

---

4. The Report of the Senate Committee on Labor and Public Welfare apparently is identical to the House Report. S.Rep.No. 92–1125, 92d Cong., 2d Sess. (1972).

5. Ramirez, et al. v. Toko Kaiun K.K., 385 F.Supp. 644 (N.D.Cal.1974); Shellman v. United States Lines Operators, Inc., Civil No. CV 73–1902–R (C.D.Cal. filed Nov. 21, 1974); Citizen v. M/V TRITON, 384 F. Supp. 198 (E.D.Tex.1974); Slaughter v. S.S. RONDE, 390 F.Supp. 637 (S.D.Ga. filed Sept. 11, 1974); Hite v. Maritime Overseas Corp., 380 F.Supp. 222 (E.D.Tex.1974); Lucas v. "Brinknes" Schiffahrts Ges., 379 F. Supp. 759 (E.D.Pa.1974); Fedison v. The Vessel WISLICA, 382 F.Supp. 4 (E.D.La. 1974); Hite v. Maritime Overseas Corp., 375 F.Supp. 233 (E.D.Tex.1974).

Cong. & Admin.News, *supra,* at p. 4705, provides that in cases such as this one the federal courts are to formulate uniform federal law and not to apply differing state law principles on the basis of location of the port in which an accident occurred.

Restatement (Second) of Torts § 343 (1965) provides:

§ 343. Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Comment a thereto provides that section 343 "should be read together with" section 343A which "limits the liability" stated in section 343. Section 343A(1) [6] states:

§ 343A. Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Employees of independent contractors doing work on property of the owner are invitees of the latter. W. Prosser, Handbook of the Law of Torts § 61, at 385–86 (4th ed. 1970). But the owner is not liable

* * * for harm resulting from conditions from which no unreasonable risk was to be anticipated, or those which the occupier did not know and could not have discovered with reasonable care. * * *

Likewise, in the usual case, there is no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent to him that he may reasonably be expected to discover them. Against such conditions it may normally be expected that the visitor will protect himself. It is for this reason that it is so frequently held that reasonable care requires nothing more than a warning of the danger. But this is certainly not a fixed rule, and all of the circumstances must be taken into account. In any case where the occupier, as a reasonable man, should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required. This is true, for example, where there is reason to expect that the invitee's attention will be distracted, as by goods on display, or that after lapse of time he may forget the existence of the condition, even though he has discovered it or been warned; or where the condition is one which would not reasonably be expected, and for some reason, such as an arm full of bundles, it may be anticipated that the visitor will not be looking for it. It is true also where the condition is one such as icy steps, which cannot be negotiated with reasonable safety even though the invitee is fully aware of it, and, because the premises are held open to him for his use, it is to be expected that he will nevertheless proceed to encounter it. In all such cases the jury may be permitted to find that obviousness, warning or even knowledge is not enough. It is generally agreed that the obligation as to the condition of the premises is of such importance that it can-

---

6. Subsection (2) of section 343A deals with public land or public utilities and has no applicability in this case.

not be delegated, and that the occupier will be liable for the negligence of an independent contractor to whom he entrusts maintenance and repair.

In particular, the possessor must exercise the power of control or expulsion which his occupation of the premises gives him over the conduct of a third person who may be present, to prevent injury to the visitor at his hands. He must act as a reasonable man to avoid harm from the negligence of contractors and concessionaires as to activities on the land, as well as that of other persons who have entered it, or even from intentional attacks on the part of such third persons. But he is required to take action only when he has reason to believe, from what he has observed or from past experience, that the conduct of the other will be dangerous to the invitee. Again, in the usual case, a warning will be a sufficient precaution, unless it is apparent that, either because of lack of time or by reason of the character of the conduct to be expected on the part of the third person, it will not be effective to give protection. [*Id.* at 393–95; footnotes omitted.]

■ It is possible to argue that the plaintiffs and their fellow longshoremen forgot on February 18th the existence of the unfastened beam above the lower hold. But the presence of the unfastened beam was a most evident and continuing condition which may have been largely ignored by the longshoremen but hardly entirely forgotten particularly since the boom operator and those aiding him by comments had to lower the cargo hook down and up past the offending beam. Thus, this case presents a fact situation in which the danger was open, obvious, apparent and known to plaintiffs. Accordingly, Restatement § 343(b), *supra,* would appear to provide liability only if the person contracting with the independent contractor (*i. e.,* in the context of this case, the shipowner

contracting with the stevedore) "should except that [his invitees] * * * will not discover or realize the danger, or will fail to protect themselves against it * * *". In this case the plaintiffs and the members of their gang did discover and realize the danger. Further, the shipowner could reasonably have expected that the longshoremen would have discovered the unsecured beams and would have protected themselves by removing all of those beams or by fastening them. This is not a case like that set forth in illustration 5, Restatement § 343A, *supra,* in which a person employed in an office located in an office building slipped "over a slippery waxed stairway, whose condition is visible and quote obvious" and upon which she walked because "[h]er only alternative to taking the risk was to forgo her employment." In that situation the Restatement would permit that injured person to recover in a negligence action against the office building owner. By way of contrast, the two plaintiffs in this case were in no such similar position. Nor would they seem within the approach suggested in 2 F. Harper and F. James, The Law of Torts § 27.13 (1956)—an approach seemingly somewhat more advantageous to a plaintiff than the approaches of either the Restatement or of Professor Prosser—to have been subjected to a "condition *unreasonably* dangerous" (§ 27.13 at 1490; emphasis in original). Thus, regardless of whether the duty upon a person who "employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken," Restatement, *supra* at § 413, is or is not a type of duty owed to employees of independent contractors who work on the premises, the defendant shipowner is not liable in this case. In passing, however, it is noted that there is a conflict among the jurisdictions as to whether the "peculiar risk" doctrine does or does not apply to

such employees.[7] Even if that doctrine does so apply, there is authority that it only applies if it is the *work*, not the negligent condition, which poses the "peculiar risk".[8] Herein if there was a "peculiar risk", it was posed not by the nature of the unloading duties, *i. e.*, not by the work but by the beam, *i. e.*, the offending condition. But herein it is not necessary to reach the issues involved in the applicability *vel non* of the "peculiar risk" doctrine because in the context of the facts in this case settled principles of land-based tort law do not impose liability in favor of the employees of an independent contractor for the open and obvious negligence of the person in control of the premises upon which those employees are at work.

Nevertheless, plaintiffs herein contend, *inter alia*, that the following paragraphs in the House Committee report (3 U.S.Code Cong. & Admin.News, *supra* at p. 4704) entitle them to recover herein:

> Permitting actions against the vessel based on negligence will meet the objective of encouraging safety because the vessel will still be required to exercise the same care as a land-based person in providing a safe place to work. Thus, nothing in this bill is intended to derogate from the vessel's responsibility to take appropriate corrective action where it knows or should have known about a dangerous condition.

> So, for example, where a longshoreman slips on an oil spill on a vessel's deck and is injured, the proposed amendments to Section 5 would still permit an action against the vessel for negligence. To recover he must estab-

lish that: 1) the vessel put the foreign substance on the deck, or knew that it was there, and willfully or negligently failed to remove it; or 2) the foreign substance had been on the deck for such a period of time that it should have been discovered and removed by the vessel in the exercise of reasonable care by the vessel under the circumstances. The vessel will not be chargeable with the negligence of the stevedore or employees of the stevedore.

It is true that the words following "2" in the next to the last sentence of that quotation, standing by themselves and preceded by the word "or", not "and", may well at first blush appear to entitle plaintiff to recovery herein. The ship had the opportunity after the lower hold hatch cover was removed on February 17, 1973 to discover and to rectify the condition of the beam which was a proximate cause of the accident on February 18th. But it would not seem that the ship or its officers or crew acting in the exercise of reasonable care should have believed it was incumbent upon the ship under the circumstances to remove or fasten a beam (a) which the longshoremen could have removed at any time as they did its three companion (and six out of a total of eight) beams, or (b) which the longshoremen could have secured or fastened. Moreover, the House Report calls specifically for longshoremen to be placed vis a vis shipowners in the same position as their land-based counterparts are placed toward land-based property owners (*id.* at pp. 4702, 4703, 4704, 4705). And the paragraph (at p. 4704) directly after the above

7. *Compare, e. g.*, Parsons v. Amerada Hess Corp., 422 F.2d 610 (10th Cir. 1970), and Welker v. Kennecott Copper Co., 1 Ariz. App. 395, 403 P.2d 330 (1965), stating that employees of independent contractors are not "others" as that term is used in the Restatement, *supra*, §§ 416–29, *with* Person v. Cauldwell-Wingate Co., 176 F.2d 237, 240 (2d Cir.) (L. Hand, C. J.), cert. denied, 338 U.S. 886, 70 S.Ct. 189, 94 L.Ed. 544 (1949),

and Woolen v. Aerojet General Corp., 57 Cal. 2d 407, 20 Cal.Rptr. 12, 369 P.2d 708 (1962), stating that employees of independent contractors are "others" as that term is used in Restatement, *supra*, §§ 416–29.

8. *See, e. g.*, Cutlip v. Luckey Stores, Inc. et al., 22 Md.App. 673, 684–86, 325 A.2d 432 (1974).

quoted two paragraphs includes this observation:

> Under this standard, as adopted by the Committee, there will, of course, be disputes as to whether the vessel was negligent in a particular case. Such issues can only be resolved through the application of accepted principles of tort law and the ordinary process of litigation—just as they are in cases involving alleged negligence by land-based third parties. The Committee intends that on the one hand an employee injured on board a vessel shall be in no less favorable position vis a vis his rights against the vessel as a third party than is an employee who is injured on land, and on the other hand, that the vessel shall not be liable as a third party unless it is proven to have acted or have failed to act in a negligent manner such as would render a land-based third party in non-maritime pursuits liable under similar circumstances.

If the plaintiffs herein can recover, then the door will be wide open for longshoremen to recover for shipowners' negligence on a basis that is not available against land or building owners to employees of independent contractors who do work on such land and/or in such buildings. While that result would not offend the elimination by the Congress in 1972 of the principle of unseaworthiness as a remedy against the ship by a longshoreman, it would negate the repeated insistence in the House Report concerning the applicability of principles of land-based tort law. In that context, the possible or literal word-for-word application of one illustration in the House Report may not prevail. Accordingly, judgment is today being entered herein for defendant.

The Court requested that the appendix, which is available in the cited volume, not be printed.