**Juan VASQUEZ, Plaintiff,**

v.

**INTERMARITIME CARRIERS S.A., Defendant.**

**No. 76 Civ. 5682–CSH.**

United States District Court, S. D. New York.

Oct. 31, 1977.

Zimmerman & Zimmerman, New York City, for plaintiff; Edward D. Lory, New York City, of counsel.

Michael D. Martocci, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Defendant Intermaritime Carriers, the vessel owner, has moved before this Court for a dismissal of plaintiff longshoreman's personal injury claim as time-barred by New York State's three-year statute of limitations, CPLR § 214(5). For the reasons discussed herein, the motion is denied.

Plaintiff, a New York resident, avers he was injured while employed as a longshoreman on the defendant's vessel while she was docked in Newark, New Jersey on April 26, 1973. This suit was commenced on December 21, 1976 under the Longshoremen's and Harbor Workers' Compensation Act (the "Act"), 33 U.S.C.A. § 901 *et seq.* (1970), as amended (Supp.1977).

The defendant shipowner raises only one question on this motion: whether New York's three-year statute of limitations bars the plaintiff's action. No argument is made that the claim should be barred by the doctrine of laches and consequently no position on the merits of such an assertion is intended in this opinion.

Prior to the 1972 amendments to the Act, it was clear that state statutes of limitation did not operate to bar injury or death actions brought on behalf of longshoremen. The timeliness of the action was instead measured by the equitable doctrine of laches, which American admiralty courts derived from English authority, *The Key City*, 81 U.S. (14 Wall.) 653, 20 L.Ed. 896 (1871), and applied to longshoremen's suits against vessels founded upon unseaworthiness and negligence, *Czaplicki v. The Hoegh Silvercloud*, 351 U.S. 525, 533, 76 S.Ct. 946, 100 L.Ed. 1387 (1956). Laches consists of a combination of unreasonable delay by the plaintiff in commencing the suit and resulting prejudice to the defendant; each case necessarily turns on its own circumstances. Admiralty courts consider an analogous state statute of limitations as a guideline in determining laches, but its effect is limited to the burden of persuasion on the issue. Thus Judge Friendly observed in *Larios v. Victory Carriers, Inc.*, 316 F.2d 63, 66 (2d Cir. 1963):

"When the suit has been brought after the expiration of the state limitation period, a court applying maritime law asks why the case should be allowed to proceed; when the suit, although perhaps long delayed, has nevertheless been brought within the state limitation period, the court asks why it should not be."

The 1972 amendments to the Act eliminated unseaworthiness as a basis for recovery by longshoremen, relegating them to principles of negligence deriving from land-based authority. In *Munoz v. Flota*

*Merchante Grancolombiana, S.A.*, 553 F.2d 837, 840 (2d Cir. 1977), the Second Circuit reviewed the purpose of the amendments and described the proper function of the courts:

> "Federal courts were to fashion a uniform law of negligence in future cases, based not upon the doctrine of seaworthiness or 'nondelegable duty,' but by analogy to land-based common law tort principles."

The present motion poses the question of whether the Congress, in eliminating unseaworthiness as a basis of a shipowner's liability to longshoremen and recasting it in terms of "land-based common law tort principles", also intended to do away with laches as the measure of the timeliness of suit, recasting that question in terms of state statutes of limitations.

Neither the amendments nor the legislative history [1] address this question directly. The key amendment, 33 U.S.C. § 905(b), declares the substantive concepts of law, without discussing the time within which suit must be brought.[2] The Committee Report is equally devoid of specific references to statutes of limitation or timeliness; however the defendant in the case at bar argues that Congressional intent to substitute limitations for laches should be inferred from certain general statements in the Report:

> "The Committee believes that where a longshoreman or other worker covered under this Act is injured through the fault of the vessel, the vessel should be liable for damages as a third party, just as land-based parties in non-maritime pursuits are liable for damages when, through their fault, a worker is injured.

> \*　　\*　　\*　　\*　　\*　　\*

> "The purpose of the amendments is to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore, insofar as bringing a third party damage action is concerned, and not to endow him with any special maritime theory of liability or cause of action under whatever judicial nomenclature it may be called, such as 'unseaworthiness', 'non-delegable duty', or the like.

> \*　　\*　　\*　　\*　　\*　　\*

> "Under this standard, as adopted by the Committee, there will, of course, be disputes as to whether the vessel was negligent in a particular case. Such issues can only be resolved through the application of accepted principles of tort law and the ordinary process of litigation—just as they are in cases involving alleged negligence by land-based third parties. The Committee intends that on the one hand an employee injured on board a vessel shall be in no less favorable position vis a vis his rights against the vessel as a third party than is an employee who is injured on land, and on the other hand, that the vessel shall not be liable as a third party unless it is proven to have acted or have failed to act in a negligent manner such as would render a land-based third party in non-maritime pursuits liable under

1. Report of the House Education and Labor Committee, H.R.Rep.No.1441, 92nd Cong., 2d Sess., 1972 U.S. Code Cong. & Admin.News pp. 4695 *et seq.* (the "Committee Report").

2. § 905(b) provides:
   "In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services,

no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter."

similar circumstances." 1972 U.S.Code Cong. & Admin.News pp. 4702–05.

I have concluded that no such inference can properly be drawn, in view of other statements in the Committee Report which demonstrate that Congress intended by the amendments (1) a specific and limited reform—substitution of land-based common law tort principles for unseaworthiness as the basis of liability; and (2) that implementation of these liability principles should be uniform throughout the federal courts. Thus the Committee Report recites:

> "Finally, the Committee does not intend that the negligence remedy authorized in the bill shall be applied differently in different ports depending on the law of the State in which the port may be located. The Committee intends that legal questions which may arise in actions brought under these provisions of the law shall be determined as a matter of Federal law. In that connection, the Committee intends that the admiralty concept of comparative negligence, rather than the common law rule as to contributory negligence, shall apply in cases where the injured employee's own negligence may have contributed to causing the injury. Also, the Committee intends that the admiralty rule which precludes the defense of 'assumption of risk' in an action by an injured employee shall also be applicable." *Id.* at 4705.

Thus Congress specifically declared its intention to retain the admiralty principles of comparative negligence and preclusion of the defense of assumption of the risk. Given those declarations, it is difficult for defendant to argue that Congress intended, *sub silentio*, to jettison the admiralty principle of laches. And that difficulty is compounded when one considers the practical consequences of imposing upon longshoremen's suits against vessels the statutes of limitations of the several states. Because those statutes differ from state to state, the intended objective of uniformity among the federal courts would be undermined. To be sure, a reference to analogous state limitations periods under the laches principle prevents complete uniformity in respect of timeliness of suits; but at least the admiralty rule of laches brings about a uniform approach to the question, from which I am not persuaded that Congress intended to depart.[3]

There is another basis for retaining the admiralty rule of laches in longshoremen's suits against vessels. One reason for admiralty's application of laches may be found in the fact that vessels are wanderers; they sail from port to port, frequently on unpublished and unpredictable schedules. In these circumstances, admiralty has traditionally recognized the necessity of exceptions to strict periods of limitation: "exceptions which have their foundation in the inconvenience or the impracticability of sooner enforcing the demand, as in the case of persons beyond sea." 1 *Benedict on Admiralty* (5th ed., 1925) at § 463, p. 548. The doctrine of laches takes these practical realities into account; comparable consideration is reflected by the statute relating to wrecks and salvage, 46 U.S.C. §§ 721–731, which conditions the running of the limitations period for salvage claims upon the availability of the assisted vessel for arrest.[4] While more recent "long-arm" jurisdictional statutes may have reduced the practical need for admiralty's laches rule, it retains in my judgment sufficient vitality to pre-

3. In addition to its observation in *Munoz, supra,* the Second Circuit has said in *Napoli v. Transpacific Carriers Corp.,* 536 F.2d 505, 507 (2d Cir. 1976) that definition of the Act's principles were left to the courts, "the only requirement being that judicial interpretation should be nationally uniform."

4. 46 U.S.C. § 730 provides:
"A suit for the recovery of remuneration for rendering assistance or salvage services shall not be maintainable if brought later than two years from the date when such assistance or salvage was rendered, unless the court in which the suit is brought shall be satisfied that during such period there had not been any reasonable opportunity of arresting the assisted or salved vessel within the jurisdiction of the court or within the territorial waters of the country in which the libelant resides or has his principal place of business."

clude an inference that Congress did away with the rule in the 1972 amendments to the Act, particularly in view of the substantial grounds afforded by the legislative history for drawing the opposite inference.

For these reasons, defendant's motion to dismiss the complaint is denied.[5]

It is So Ordered.

---

5. The motion papers raise the additional question of whether the New York or New Jersey statute of limitations applies to the facts of the case. I need not resolve that question in view of the conclusion that the suit is not subject to dismissal by sole reference to a state statute. The question will revive if defendant interposes a defense based on laches; selection of the applicable statute would then be necessary for the limited purpose declared in *Larios, supra.*