Giuseppe **BONGIOVANNI**, Plaintiff,

v.

**N. V. STOOMVAART–MAATS "OOST-ZEE" and M. P. Howlett, Inc.**, Defendants.

No. 77 Civ. 1316 (HFW).

United States District Court, S. D. New York.

Sept. 15, 1978.

Zimmerman & Zimmerman, New York City by Edward D. Lory, New York City, of counsel, for plaintiff.

Bigham, Englar, Jones & Houston, New York City by James S. McMahon, Jr., Richard J. Cohan, New York City, of counsel, for defendants.

Michael D. Martocci, New York City, for N. V. Stoomvaart.

## OPINION

WERKER, District Judge.

These are companion motions for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure by defendants N.V. Stoomvaart-Maats "Oostzee" ("Stoomvaart") and M. P. Howlett, Inc. ("Howlett").

Plaintiff Giuseppe Bongiovanni, formerly employed as a longshoreman by Universal Stevedoring Co. ("Universal"), seeks to recover for injuries incurred during the course of his employment. He was allegedly injured on December 23, 1972 while helping to unload the "Jasmine," a Stoomvaart container vessel. According to Bongiovanni, the accident occurred after he and several of his coworkers had fastened T-shaped hooks to the four corners of a container located in the No. 2 hatch of the Jasmine and while he was standing on top of the container as it was being lifted by an offshore crane operated by an employee of Howlett. Bongiovanni states that after the container had been raised some three or four feet, he was struck by one of the hooks that his co-workers had fastened to the container. The hooks and other apparatus which were used to lift the container were furnished by Universal.

Jurisdiction over this action is founded on diversity of citizenship. At least three separate claims are asserted against the defendants for negligence, strict liability in tort and unseaworthiness.

Both defendants maintain that they are entitled to judgment as a matter of law based upon material facts which are not in issue. Howlett also contends that it is entitled to an order dismissing the complaint as barred by either the relevant state statute of limitations provision or laches. It further suggests that under the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA") Bongiovanni may not prevail on the unseaworthiness claim asserted against it.[1]

1.

The LHWCA was enacted in 1927 to extend the benefits of workmen's compensation schemes to employees, such as longshoremen, injured "upon the navigable waters of the United States" and, hence, beyond the jurisdiction of any individual states. *Nacirema Co. v. Johnson,* 396 U.S. 212, 217, 90 S.Ct. 347, 24 L.Ed.2d 371 (1969). It limited the liability of stevedoring firms to payment of fixed compensation benefits and barred their longshoreman employees from recovering common law damages against them. 33 U.S.C. §§ 904, 905. Thereafter, however, the Supreme Court held that a longshoreman could recover damages from a shipowner when his injury resulted from an unseaworthy condition, even when the condition resulted solely from the stevedore's actions, *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), and it further ruled that the vessel could implead the stevedore and recover any damages for which it was held liable on the theory that the stevedore had breached its warranty of workmanlike performance, *Ryan Stevedoring Co. v. Pan Atlantic S.S. Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). As a result, longshoremen were able to bring actions for damages despite having received compensation payments, and shipowners could be held strictly liable for any damages which were recovered.

---

1. The Howlett notice of motion further recites that Howlett moves to vacate "the purported service of process . . . on the ground that said service of process was insufficient." That contention is not discussed in Howlett's motion papers, however, and has, as a consequence, not been considered in this opinion.

The 1972 LHWCA Amendments were intended to limit such indirect suits against employers by requiring that any person receiving compensation payments prove negligence before recovering damages from a shipowner. And since the shipowner's liability was limited to situations in which it was actually at fault, the 1972 Amendments barred any attempt by the shipowner to implead the stevedore.

Section 905(b) of the LHWCA, as amended, which is the governing provision, provides, in part, as follows:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.

It covers accidents occurring after thirty days after the date the LHWCA was amended (October 27, 1972) and therefore applies to the instant action. Pub.L.No. 92–576, § 22, 86 Stat. 1251, 1265.

### 2.

Turning first to the Stoomvaart motion, the Court notes that three persons have thus far been deposed in this lawsuit: the oiler on the Howlett crane, William Palmisano; the captain of the Jasmine, M. Horjus;[2] and the plaintiff. According to their uncontradicted testimony, an officer of the Jasmine is always present on deck when cargo is discharged from that vessel. However, only Bongiovanni and three of his co-workers were in hatch No. 2 immediately prior to the accident. A fifth Universal employee, the signalman "Cha Cha," was standing on the deck of the vessel, but it is unclear whether he had signalled the crane to begin lifting the container at the time of the accident.[3] Bongiovanni first testified that he had seen Cha Cha give a signal to raise the container before the accident, but he later revised his answers to state that he did not know if the signal had been given because his view had been blocked by the hatch coaming.[4]

Bongiovanni contends that Stoomvaart should not be granted summary judgment: (1) because there are material factual issues which must await a trial on the merits; (2) because he has not yet had an opportunity to depose Robert Swartz, the operator of the Howlett crane at the time of the accident; and (3) because the Second Circuit case law regarding a shipowner's liability to a longshoreman is a shambles following the recent Court of Appeals decisions in *Cox v. Flota Mercante Grancolumbiana, S. A.,* 577 F.2d 798 (2d Cir. 1978), and *Canizzo v. Farrell Lines, Inc.,* 579 F.2d 682 (2d Cir. 1978).

With respect to the first contention, based on nothing more than the affirmation of his counsel, Bongiovanni informs the court that an offshore crane is positioned by a tug which takes its directions from the deck of the vessel to which it will be moored; that the mooring lines are in part fastened by members of the ship's crew acting under the direction of a deck officer; that these lines require periodic correction

---

**2.** Horjus was not the captain of the vessel at the time of Bongiovanni's accident. He did, however, serve as its captain from June to December of 1973 and was again serving as its captain at the time of his deposition in January of 1978.

**3.** The defendants contend that Bongiovanni admitted having seen Cha Cha signal the crane operator to raise the container, but I have been unable to locate any such admission in the corrected deposition. *See* text *infra.* Even if it were there, I fail to see how it would affect the question of Stoomvaart's liability.

**4.** Although the Court could technically ignore the revisions because Bongiovanni failed to explain his reasons for making them, *see Architectural League of New York v. Bartos,* 404 F.Supp. 304, 311 n.7 (S.D.N.Y.1975); Rule 30(e), Fed.R.Civ.P.; 8 C. Wright & A. Miller, Federal Practice and Procedure § 2118 (1970), it has instead chosen to accept his corrections for present purposes. By the same token, the Court has accepted the deposition of Captain Horjus despite the fact that it has not been properly executed due to his absence from the jurisdiction.

as containers are off-loaded; and that such corrections are the responsibility of the ship and crane crews and not the longshoremen. Although counsel does not actually state the significance of this "information," it is presumably offered to show that Stoomvaart could be liable to Bongiovanni if the evidence at trial were to establish that the hook which struck Bongiovanni worked loose as a result of movement caused by improper mooring of either the crane or the Jasmine. The Bongiovanni argument is based upon misstatement of the record and hearsay, however. For example, although Bongiovanni evidently contends that the mooring lines required adjustment as containers were removed from the vessel, the present Captain of the Jasmine noted that the stabilization of the ship required no adjustments during unloading. Horjus deposition at 13.

Even if the Court were to accept Bongiovanni's contentions, summary judgment still could not be averted since there is no suggestion whatever in the record that the accident in question resulted from improper mooring rather than the failure of one of the Bongiovanni's co-workers to secure his hook adequately.

■ The Court is not persuaded that summary judgment should be denied because Bongiovanni has yet to depose the crane operator. Swartz resides in the metropolitan area and if Bongiovanni indeed wanted his testimony he had more than ample opportunity to subpoena him to appear for a deposition. *See* Rule 45(d), Fed. R.Civ.P. Permitting Bongiovanni to oppose summary judgment based upon his own failure to depose Swartz during the more than sixteen months that this action has been pending would in effect be to reward him for failing to proceed with diligence. Moreover, since the need to depose Swartz is noted only in the affirmation of counsel, granting a continuance on that ground would violate the express terms of Rule 56(f), Fed.R.Civ.P., which permits the Court to do so only when it appears "*from the affidavits of a party,* opposing the motion that he cannot for reasons stated present by

affidavit facts essential to justify his opposition." (Emphasis added.)

■ Bongiovanni's final contention is that the unresolved conflict in this circuit between the panels in the *Cox* and *Canizzo* cases makes it only prudent to await further clarification before deciding Stoomvaart's motion. The Court sees no reason for such reticence.

In *Cox,* which was the earlier of the two cases to be decided, the plaintiff longshoreman was injured when a hatch cover suddenly fell upon him as he was working in the hold of a vessel. There was evidence that at least one member of the ship's crew had been advised that the hatch cover needed to be pinned to guard against dislodging and had replied, "We're going to take care of it," though it was possible, if not likely, that no one ever did so. After a jury verdict in Cox's favor, the shipowner appealed, arguing that it was not liable to Cox as "an employee of an independent contractor for injuries sustained as the result of a dangerous condition, latent or open and obvious, known to and within the control of such a contractor." *Cox v. Flota Mercante Grancolumbiana, S. A.,* 577 F.2d at 801. Judge Moore, writing for a panel consisting of himself and Judges Lumbard and Mulligan, noted that the facts of the case were almost identical to those found in *Anuszewski v. Dynamic Mariners Corp. Panama,* 391 F.Supp. 1143 (D.Md.1975), where the Fourth Circuit on appeal held that a shipowner was not liable to a stevedore's employees in a post-1972 Amendments case even though it had in fact been negligent. *Id.,* 540 F.2d 757, 759 (4th Cir. 1976), *cert. denied,* 429 U.S. 1098, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977). Although Judge Moore therefore suggested by implication that the shipowner in *Cox* had been negligent, he nevertheless concluded in accordance with *Anuszewski* as follows:

> The stevedore alone had been entrusted with the unloading operation. . . . In view of the overwhelming decisional authority and the conclusion therefrom that the shipowner had no duty to supervise the operation entrusted to the steve-

dore alone, the judgment must be reversed and the complaint dismissed.

*Cox v. Flota Mercante Grancolumbiana, S. A.,* 577 F.2d at 804.

Three weeks after *Cox* was decided, another panel of the Second Circuit, consisting of Judges Friendly, Smith and Meskill, retreated from its holding in *Canizzo* (Friendly, J., dissenting from that portion of the opinion). There, the district court had found a shipowner-defendant liable in a post-1972 Amendments case for injuries sustained when a longshoreman-plaintiff slipped on a patch of grease partially obscured by a pile of wires. In the district court's view, the shipowner was liable either because its crew had created the dangerous condition by placing the wires on top of the grease, or because its crew knew or should have known of the dangerous condition.

After recognizing that there was "considerable legal uncertainty" as to whether a shipowner should be held liable when its negligence "combines with the negligence of an independent stevedore to cause injury to a longshoreman," *Canizzo v. Farrell Lines, Inc.,* 579 F.2d at 685, the majority of the *Canizzo* panel, per Smith, J., noted the policy dilemma with which it was presented:

> Too strict a view of a shipowner's liability in these situations would do much to diminish the salutary effects of the 1972 amendments by, in effect, making shipowners liable, once again, on what is akin to an unseaworthiness standard, but without recourse to contribution on the part of a negligent stevedore. Too lax a view would specifically contradict the congressional intention to make shipowners liable for their own negligence under the amended statute.

*Id.* at 685.

The majority resolved the question by holding that the district judge had properly concluded that the shipowner should be held liable for damages as a joint tortfeasor. In a most unusual footnote, Judge Smith conceded that his opinion in *Canizzo* could not be reconciled with the result in the *Cox* case

and suggested that *Cox* was "in conflict with at least *Lubrano v. Netherlands S. S. Co.,* 572 F.2d 364 (2d Cir. Feb. 15, 1978), among the decisions in this circuit." 579 F.2d at 686 n.3. In response to this clear disagreement within the circuit, moreover, Judge Friendly observed in his dissenting opinion that "district court judges can scarcely be expected to function with so discordant a chorus [on the Second Circuit]," *id.,* at 690, and his remarks evidently impelled at least one of my brethren to deny summary judgment in a longshoreman's injury case pending some resolution of the *Cox-Canizzo* conflict, *Karczewski v. Flota Mercante Grancolumbiana, S. A.,* No. 77–4193 (S.D.N.Y. June 6, 1978) (Brieant, J.). In addition, since *Canizzo* was handed down, yet another Second Circuit panel has had an opportunity to comment upon the question of a shipowner's liability to an injured longshoreman, holding that a shipowner can be held liable for negligence even if others were also responsible for causing the accident. *Lopez v. A/S D/S Svendborg,* 581 F.2d 319 (2d Cir. 1978). Any attempt to predict the likely outcome of the dispute within the circuit is complicated, however, by the fact that two district court judges, sitting by designation, participated in the *Lopez* decision.

I do not believe that the lack of harmony within our circuit necessitates adoption of a "wait and see" posture in the instant lawsuit. Even if it is assumed that a shipowner is liable for its concurrent negligence in causing injury to a longshoreman, Stoomvaart still would be entitled to a judgment dismissing the claims against it here for the simple reason that nothing in the record before me suggests that it was in any way negligent. Whether the signalman acted precipitously in directing that the container be hoisted, or the crane operator began to take a strain without awaiting the appropriate signal, as Bongiovanni would presumably argue, in the absence of any evidence that the lone deck officer customarily provided by the shipowner somehow contributed to the occurrence of the accident, the shipowner cannot, as a matter

of law, be held liable for negligence. *See, e. g., Munoz v. Flota Mercante Grancolombiana,* 553 F.2d 837, 840 (2d Cir. 1977). The Stoomvaart motion is therefore granted.

### 3.

■ Howlett's principal contention is that the timeliness of this diversity-based lawsuit should be determined by reference to the statute of limitations governing analogous claims raised in state court, *see generally Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *O'Sullivan v. Felix,* 233 U.S. 318, 322, 34 S.Ct. 596, 58 L.Ed. 980 (1914), rather than the equitable doctrine of laches previously relied upon in suits of this nature. Howlett therefore urges the Court to apply the three-year limitations period provided in section 214 of the New York Civil Practice Law and Rules (McKinney Supp. 1977–78) for nonintentional torts resulting in a personal injury. If this were done, the Court would be compelled to dismiss Bongiovanni's action as having been brought more than three years after the accident.

It is Howlett's contention that, in a post-1972 Amendments case, since unseaworthiness is no longer available as a basis for recovery, it is illogical to apply the timeliness concept controlling injuries at sea (*i. e.,* laches) rather than the rules which would otherwise be applied to a diversity negligence action (*i. e.,* a statutory limitations period). More specifically, Howlett notes that in eliminating the no-fault concept of unseaworthiness as a basis for a longshoreman's recovery against a vessel, Congress sought to "place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore . . . and not to endow him with any special maritime theory." H.R.Rep. No. 1441, 92d Cong., 2d Sess., *reprinted in* [1972] U.S. Code Cong. & Admin. News 4698, 4703. What Howlett fails to note, however, is that the House Education and Labor Committee went on to observe in its report on the 1972 LHWCA Amendments that:

*Finally, the Committee does not intend that the negligence remedy authorized in the bill shall be applied differently in different ports depending on the law of the State in which the port may be located. The Committee intends that legal questions which may arise in actions brought under these provisions of the law shall be determined as a matter of Federal law.* In that connection, the Committee intends that the admiralty concept of comparative negligence, rather than the common law rule as to contributory negligence, shall apply in cases where the injured employee's own negligence may have contributed to causing the injury. Also, the Committee intends that the admiralty rule which precludes the defense of 'assumption of risk' in an action by an injured employee shall also be applicable.

*Id.* at 4705 (emphasis added). While it is true that the Committee did not specifically identify the timeliness of a longshoreman's personal injury action as a question to be determined under Federal law, as it did with several other issues, it is clear that the Committee's unambiguous goal of nationwide uniformity could only be fulfilled by not deferring to state limitations periods. Accordingly, as every Judge that has considered the question in this district has evidently concluded, I hold that whether this action is time-barred must be determined under the traditionally applied doctrine of laches. *Lanza v. Charente SS Co., Ltd.,* No. 77–697 (S.D.N.Y. Dec. 8, 1977) (Duffy, J.); *Vasquez v. Intermaritime Carriers S. A.,* 439 F.Supp. 688 (S.D.N.Y.1977) (Haight, J.); *Lopez v. Reederei Richard Schroder,* No. 76–3577 (S.D.N.Y. Mar. 7, 1977) (Metzner, J.); *Noren v. United Phillippine Lines, Inc.,* No. 76–1584 (S.D.N.Y. Mar. 2, 1977) (Frankel, J.); *Yero v. Moore-McCormack Lines, Inc.,* No. 76–4280 (S.D.N.Y. Jan. 6, 1977) (Ward, J.).

The state limitations period is thus but one factor to be considered. *Larios v. Victory Carriers, Inc.,* 316 F.2d 63, 66 (2d Cir. 1963). As the Supreme Court has noted:

The equities of the parties must be considered as well. Where there has been no inexcusable delay in seeking a remedy

and where no prejudice to the defendant has resulted from the mere passage of time, there should be no bar to relief. *Gardner v. Panama Railroad Co.,* 342 U.S. 29, 30, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951).

 Although Bongiovanni's counsel has not deigned to explain the reasons for the hiatus between the time of the accident in 1972 and the filing of this action in 1977, the scales of equity still do not tip decidedly in Howlett's favor. Howlett's only specific claim of prejudice is that it has been harmed because the operator of the Howlett crane is no longer its employee. However, as has been noted earlier, this individual resides in the New York metropolitan area and Howlett will certainly be able to compel him to testify. Therefore, in the absence of any showing of prejudice to Howlett, the Court concludes that Bongiovanni may proceed with this action despite the length of time that elapsed before it was initiated. *See Larios v. Victory Carriers, Inc.,* 316 F.2d at 67.

Howlett's next contention is that it cannot under any circumstances be held liable for having hoisted a container when its crane operator acted in accordance with directions received from a Universal signalman and without the ability to see into the hold of the vessel to observe if it was safe to do so. While I agree with this statement as a general proposition, the present record fails to support certain factual assumptions upon which it is predicated. For example, although both Howlett and Stoomvaart have argued that Bongiovanni admitted that Cha Cha signaled the crane to raise the container while Bongiovanni was still standing on it, examination of the corrected deposition reveals no such admission:

Q. Well, did he [the signalman] give the signal while you were still standing on the container? Yes or no.

A. <u>I do not know if</u> He gave the signal for it to move.

Q. Is that while you were still on the container?

A. Yes.

Q. And was that Cha Cha?

A. Yes, he was the one.[5]

Bongiovanni deposition, sworn to Aug. 16, 1977, at 36. Also, although Howlett claims that its crane operator could not see into hatch No. 2, the testimony of the oiler working on the crane that day was simply that he did not know if this was possible. And because the control tower in which the operator sat was located some forty feet above the deck of the crane, the Court cannot say with certainty that Swartz could not observe the container being hoisted. The Howlett summary judgment motion must consequently be denied since failure to establish either of these "facts" at trial *might* result in a finding that Swartz (and hence Howlett) was negligent in hoisting the container from the No. 2 hatch of the Jasmine.

 The only remaining contention advanced by Howlett is that Bongiovanni cannot recover against it on an unseaworthiness theory. The availability of such a claim is governed by section 905(b) of Title 33, United States Code, which precludes certain suits "based upon the warranty of seaworthiness or a breach thereof." Because the first words of section 905(b) state that it applies to "injury to a person caused by the negligence of "a vessel" rather than "vessels," Bongiovanni argues that Congress must have intended that only one vessel—namely the ship on which the injured person was working—should escape from strict liability for an unseaworthy condition. Howlett disagrees with this interpretation of the statute. In a "supplemental affidavit" it argues in the alternative that if Bongiovanni is correct, Howlett should be granted leave to implead Universal because the statute only precludes a "vessel" from impleading the longshoreman's employer.

The interpretation of the LHWCA Amendment which Bongiovanni urges upon

---

5. Bongiovanni revised his response to the first question quoted by inserting the words which are underscored.

this Court does violence to the applicable definitional sections. Under the general definitions section of the United States Code, when words "importing the singular" are used in a federal statute, they must be interpreted to include and apply to the plural unless the context indicates otherwise. 1 U.S.C. § 1. Hence, more than one vessel causing injury to a person can fall within the ambit of § 905(b). Furthermore, under the LHWCA,

> [t]he term 'vessel' means any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charterer or bare boat charterer, master, officer, or crew member.

33 U.S.C. § 902(21). And the general provisions of the United States Code further define "vessel" to include "every description of water craft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3. There can therefore be little doubt that a floating crane such as the one manned by Howlett is a vessel within the meaning of 33 U.S.C. § 905(b), even though it lacks any means of self propulsion. *Ramirez v. A/S D/S Svendborg,* No. 75–703 (S.D.N.Y. Nov. 22, 1976); *The O'Boyle No. 1,* 64 F.Supp. 378, 382 (S.D.N.Y.1945), *aff'd sub nom. Shamrock Towing Co. v. Fichter Steel Corp.,* 155 F.2d 69 (2d Cir. 1946); *see Miami River Boat Yard, Inc. v. 60' Houseboat,* 390 F.2d 596 (5th Cir. 1968) (powerless houseboat); *City of Los Angeles v. United Dredging Co.,* 14 F.2d 364 (9th Cir. 1926) (powerless dredging boat); *In re Queen Ltd.,* 361 F.Supp. 1009, 1010–11 (E.D.Pa. 1973) (propellerless boat otherwise operable). I therefore conclude that Bongiovanni may recover damages from Howlett only if he establishes that Howlett was negligent.

### CONCLUSION

The Stoomvaart motion is granted and the complaint dismissed as against it. The Howlett motion is granted only insofar as it seeks to dismiss the claim of unseaworthiness. All other requested relief is denied.

SO ORDERED.