# EDMONDS $v.$ COMPAGNIE GENERALE TRANSATLANTIQUE

No. 78-479. Argued March 19, 1979—Decided June 27, 1979

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, STEWART, and REHNQUIST, JJ., joined. BLACKMUN, J., filed a dissenting opinion, in which MARSHALL and STEVENS, JJ., joined, *post*, p. 273. POWELL, J., took no part in the consideration or decision of the case.

*Calvin W. Breit* argued the cause for petitioner. With him on the briefs was *C. Arthur Rutter, Jr.*

*Charles F. Tucker* argued the cause for respondent. With him on the brief was *John B. King, Jr.**

---

*Briefs of *amici curiae* urging reversal were filed by *David R. Owen* for Liberty Mutual Insurance Co.; and by *Thomas D. Wilcox* for the National Association of Stevedores.

Briefs of *amici curiae* urging affirmance were filed by *Randall C. Cole-*

MR. JUSTICE WHITE delivered the opinion of the Court.

On March 3, 1974, the S.S. *Atlantic Cognac*, a containership owned by respondent, arrived at the Portsmouth Marine Terminal, Va. Petitioner, a longshoreman, was then employed by the Nacirema Operating Co., a stevedoring concern that the shipowner had engaged to unload cargo from the vessel. The longshoreman was injured in the course of that work, and he received benefits for that injury from his employer under the Longshoremen's and Harbor Workers' Compensation Act. 44 Stat. 1424, as amended, 33 U. S. C. § 901 *et seq.* In addition, the longshoreman brought this negligence action against the shipowner in Federal District Court.

A jury determined that the longshoreman had suffered total damages of $100,000, that he was responsible for 10% of the total negligence resulting in his injury, that the stevedore's fault, through a co-employee's negligence, contributed 70%, and that the shipowner was accountable for 20%.[1] Following an established principle of maritime law, the District Court reduced the award to the longshoreman by the 10% attributed to his own negligence.[2] But also in accordance with maritime law, and the common law as well, the court refused further to reduce the award against the shipowner in proportion to the fault of the employer.

The United States Court of Appeals for the Fourth Circuit, with two judges dissenting, reversed en banc, holding that the

man for American Export Lines, Inc., et al.; and by *Graydon S. Staring* for the Pacific Merchant Shipping Association.

*Paul S. Edelman, Arthur Abarbanel,* and *Bernard M. Goldstein* filed a brief for the Association of Trial Lawyers of America as *amicus curiae.*

[1] The District Court set aside a jury verdict for the longshoreman in an earlier trial because of errors in the jury instructions.

[2] The plaintiff's negligence is not an absolute bar to recovery under maritime law, which accepts the concept of comparative negligence of plaintiff and defendant. *Pope & Talbot, Inc.* v. *Hawn,* 346 U. S. 406, 408–409 (1953); *The Max Morris,* 137 U. S. 1, 15 (1890); see n. 23, *infra.*

1972 Amendments to the Act, 86 Stat. 1251, had altered the traditional admiralty rule by making the shipowner liable only for that share of the total damages equivalent to the ratio of its fault to the total fault. 577 F. 2d 1153, 1155–1156 (1978).[3] Other Courts of Appeals have reached the contrary conclusion.[4] We granted certiorari to resolve this conflict, 439 U. S. 952 (1978), and, once again,[5] we have before us a question of the meaning of the 1972 Amendments.

I

Admiralty law is judge-made law to a great extent, *United States* v. *Reliable Transfer Co.*, 421 U. S. 397, 409 (1975); *Fitzgerald* v. *United States Lines Co.*, 374 U. S. 16, 20 (1963), and a longshoreman's maritime tort action against a shipowner was recognized long before the 1972 Amendments, see *Pope & Talbot, Inc.* v. *Hawn*, 346 U. S. 406, 413–414 (1953), as it has been since.[6] As that law had evolved by 1972, a

---

[3] A panel of the Court of Appeals had earlier reached a similar conclusion. 558 F. 2d 186, 193–194 (1977); see n. 26, *infra*.

[4] *Zapico* v. *Bucyrus-Erie Co.*, 579 F. 2d 714, 725 (CA2 1978); *Samuels* v. *Empresa Lineas Maritimas Argentinas*, 573 F. 2d 884, 887–889 (CA5 1978), cert. pending, No. 78–795; *Dodge* v. *Mitsui Shintaku Ginko K. K. Tokyo*, 528 F. 2d 669, 671–673 (CA9 1975), cert. denied, 425 U. S. 944 (1976); *Shellman* v. *United States Lines, Inc.*, 528 F. 2d 675, 679–680 (CA9 1975), cert. denied, 425 U. S. 936 (1976). See also *Cella* v. *Partenreederei MS Ravenna*, 529 F. 2d 15, 20 (CA1 1975) (indicating agreement with *Dodge, supra*), cert. denied, 425 U. S. 975 (1976); *Marant* v. *Farrell Lines, Inc.*, 550 F. 2d 142, 145–147 (CA3 1977) (discussing but reserving the issue); *id.*, at 147–152 (Van Dusen, J., concurring) (expressing concern over validity of apportionment of damages).

[5] See also *Northeast Marine Terminal Co.* v. *Caputo*, 432 U. S. 249 (1977); *Director, Workers' Compensation Programs* v. *Rasmussen*, 440 U. S. 29 (1979); *P. C. Pfeiffer Co.* v. *Diverson Ford*, No. 78–425 (to be reargued October Term 1979).

[6] Title 33 U. S. C. § 933 (a), which was unchanged in 1972, states that when a longshoreman "determines that some person other than the employer or a person or persons in his employ is liable in damages, he need not elect whether to receive . . . compensation or to recover damages against such

longshoreman's award in a suit against a negligent shipowner would be reduced by that portion of the damages assignable to the longshoreman's own negligence; but, as a matter of maritime tort law, the shipowner would be responsible to the longshoreman in full for the remainder, even if the stevedore's negligence contributed to the injuries.[7] This latter rule is in accord with the common law, which allows an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, even if the concurrent negligence of others contributed to the incident.[8]

---

third person." Section 905 (b), which was added in 1972, states that the longshoreman "may bring an action against [the shipowner] as a third party in accordance with the provisions of section 933 . . . ."

[7] See, e. g., Cooper Stevedoring Co. v. Fritz Kopke, Inc., 417 U. S. 106, 108, 113 (1974) (longshoreman could have recovered entire damages from shipowner responsible for 50% of the total fault); Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U. S. 282, 283 (1952) (shipowner responsible for 25% of negligence required to pay 100% of damages, and contribution unavailable from negligent shoreside contractor, an employer under the Act). See also The Atlas, 93 U. S. 302 (1876); The Juniata, 93 U. S. 337 (1876). We stated the common-law rule in The Atlas and adopted it as part of admiralty jurisprudence: "Nothing is more clear than the right of a plaintiff, having suffered such a loss, to sue in a common-law action all the wrong-doers, or any one of them, at his election; and it is equally clear, that, if he did not contribute to the disaster, he is entitled to judgment in either case for the full amount of his loss." 93 U. S., at 315.

[8] Restatement (Second) of Torts §§ 433A, 875, and 879 (1965 and 1979); T. Cooley, Law of Torts 142–144 (1879); W. Prosser, Law of Torts § 47, pp. 297–299, and § 52, pp. 314–315 (4th ed. 1971); cf. Washington & Georgetown R. Co. v. Hickey, 166 U. S. 521, 527 (1897). A tortfeasor is not relieved of liability for the entire harm he caused just because another's negligence was also a factor in effecting the injury. "Nor are the damages against him diminished." Restatement, supra, § 879, Comment a. Likewise, under traditional tort law, a plaintiff obtaining a judgment against more than one concurrent tortfeasor may satisfy it against any one of them. Id., § 886. A concurrent tortfeasor generally may seek contribution from another, id., § 886A, but he is not relieved from liability for the

The problem we face today, as was true of similar problems the Court has dealt with in the past, is complicated by the overlap of loss-allocating mechanisms that are guided by somewhat inconsistent principles. The liability of the ship to the longshoreman is determined by a combination of judge-made and statutory law and, in the present context, depends on a showing of negligence or some other culpability. The longshoreman-victim, however, and his stevedore-employer— also a tortfeasor in this case—are participants in a workers' compensation scheme that affords benefits to the longshoreman regardless of the employer's fault and provides that the stevedore's only liability for the longshoreman's injury is to the longshoreman in the amount specified in the statute.[9] 33 U. S. C. § 905. We have more than once attempted to reconcile these systems.

We first held that the shipowner could not circumvent the exclusive-remedy provision by obtaining contribution from the concurrent tortfeasor employer. *Halcyon Lines* v. *Haenn Ship Ceiling & Refitting Corp.*, 342 U. S. 282 (1952); *Pope & Talbot, Inc.* v. *Hawn, supra;* see *Cooper Stevedoring Co.* v. *Fritz Kopke, Inc.*, 417 U. S. 106, 111–113 (1974). As a matter of maritime law, we also held that a longshoreman working on a vessel was entitled to the warranty of seaworthiness, *Seas Shipping Co.* v. *Sieracki*, 328 U. S. 85, 94 (1946), which amounted to liability without fault for most onboard injuries.[10] However, we went on to hold, as a matter of con-

---

entire damages even when the nondefendant tortfeasor is immune from liability. *Id.,* § 880. These principles, of course, are inapplicable where the injury is divisible and the causation of each part can be separately assigned to each tortfeasor. *Id.,* §§ 433A (1) and 881.

[9] Generally, workers' compensation benefits are not intended to compensate for an employee's entire losses. 1 A. Larson, Law of Workmen's Compensation § 2.50 (1978). The 1972 Amendments to the Act, however, make a determined effort to narrow the gap between the harm suffered and the benefits payable.

[10] See, *e. g., Mitchell* v. *Trawler Racer, Inc.*, 362 U. S. 539, 549–550 (1960).

tract law, that the shipowner could obtain from the stevedore an express or implied warranty of workmanlike service that might result in indemnification of the shipowner for its liability to the longshoreman. *Ryan Stevedoring Co.* v. *Pan-Atlantic S.S. Corp.,* 350 U. S. 124 (1956).

Against this background, Congress acted in 1972, among other things,[11] to eliminate the shipowner's liability to the longshoreman for unseaworthiness and the stevedore's liability to the shipowner for unworkmanlike service resulting in injury to the longshoreman—in other words, to overrule *Sieracki* and *Ryan.* See *Northeast Marine Terminal Co.* v. *Caputo,* 432 U. S. 249, 260–261, and n. 18 (1977); *Cooper Stevedoring Co.* v. *Fritz Kopke, Inc., supra,* at 113 n. 6. Though admitting that nothing in either the statute or its history expressly indicates that Congress intended to modify as well the existing rules governing the longshoreman's maritime negligence suit against the shipowner by diminishing damages recoverable from the latter on the basis of the proportionate fault of the nonparty stevedore, 577 F. 2d, at 1155, and n. 2, the en banc Court of Appeals found that such a result was necessary to reconcile two sentences added in 1972 as part of 33 U. S. C. § 905 (b). The two sentences state:

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall

---

[11] The Amendments also increased compensation benefits, expanded the Act's geographic coverage, and instituted a new means of adjudicating compensation cases. Robertson, Jurisdiction, Shipowner Negligence and Stevedore Immunities under the 1972 Amendments to the Longshoremen's Act, 28 Mercer L. Rev. 515, 516 (1977).

be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel." 33 U. S. C. § 905 (b).

The Court of Appeals described the perceived conflict in this fashion:

"The first sentence says that if the injury is caused by the negligence of a vessel the longshoreman may recover, but the second sentence says he may not recover anything of the ship if his injury was caused by the negligence of a person providing stevedoring services. The sentences are irreconcilable if read to mean that any negligence on the part of the ship will warrant recovery while any negligence on the part of the stevedore will defeat it. They may be harmonized only if read in apportioned terms." 577 F. 2d, at 1155.

For a number of reasons, we are unpersuaded that Congress intended to upset a "long-established and familiar princip[e]" of maritime law by imposing a proportionate-fault rule. Cf. *Isbrandtsen Co.* v. *Johnson,* 343 U. S. 779, 783 (1952).

A

In the first place, the conflict seen by the Court of Appeals is largely one of its own creation. Both sides admit that each sentence may be read so as not to conflict with the other. The first sentence addresses the recurring situation, reflected by the facts in this case, where the party injured by the negligence of the vessel is a longshoreman employed by a stevedoring concern. In these circumstances, the longshoreman may sue the vessel as a third party, but his employer, the stevedore, is not to be liable directly or indirectly for any damages that may be recovered. This first sentence overrules *Ryan* and prevents the vessel from recouping from the

stevedore any of the damages that the longshoreman may recover from the vessel. But the sentence neither expressly nor implicitly purports to overrule or modify the traditional rule that the longshoreman may recover the total amount of his damages from the vessel if the latter's negligence is a contributing cause of his injury, even if the stevedore, whose limited liability is fixed by statute, is partly to blame.

The second sentence of the paragraph is expressly addressed to the different and less familiar arrangement where the injured longshoreman loading or unloading the ship is employed by the vessel itself, not by a separate stevedoring company—in short, to the situation where the ship is its own stevedore.[12] In this situation, the second sentence places some limitations on suits against the vessel for injuries caused during its stevedoring operations.[13] Whatever these limitations may be, there is no conflict between the two sentences, and one arises only if the second sentence is read, as the Court of Appeals read it, as applying to all injured longshoremen, whether employed by the ship or by an independent stevedore. Nothing in the legislative history advises this construction of the sentence,[14]

---

[12] The first proposals in the legislative movement that produced the 1972 Amendments would have made all shipowners statutory employers, not just those also acting as stevedores, and thus cut off any tort action by the longshoreman. S. 525, 92d Cong., 1st Sess., § 1 (1971), Legislative History of the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972 (Committee Print compiled for the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare), pp. 393–394 (1972). Congress ultimately decided to preserve the longshoremen's tort action against shipowners acting as shipowners.

[13] In *Jackson* v. *Lykes Bros. S. S. Co.,* 386 U. S. 731 (1967), and *Reed* v. *The Yaka,* 373 U. S. 410 (1963), we upheld a longshoreman's negligence or unseaworthiness action against the shipowner-stevedore.

[14] See S. Rep. No. 92–1125, p. 11 (1972) (hereinafter S. Rep.) ("Accordingly, the bill provides in the case of a longshoreman who is *employed directly* by the vessel there will be no action for damages if the injury was caused by the negligence of persons engaged in performing longshoring services") (emphasis supplied). The House Report, H. R.

and we see no reason to depart from the language of the statute in this respect.

Respondent insists that, even though the two sentences may deal with different business arrangements, problems still arise. If under the first sentence a third-party suit against the vessel is authorized when *any part* of the negligence causing the injury is that of the vessel, it is argued that suit against the vessel under the second sentence should be barred when *any part* of the negligence causing the injury is that of a co-worker also providing stevedoring services to the vessel. Under this interpretation, the employee of the independent stevedore could recover from the ship where the stevedore was responsible for 99% of the negligence, though a ship's employee performing stevedoring services could not hold the vessel liable if his co-worker's negligence was the slightest cause of the injury.[15] This is said to be preposterous and contrary to the legislative intent to treat the vessel that provides its own stevedoring services just like other shipowners when and if it negligently causes injury in its capacity as a shipowner and just like other stevedores when it negligently injures in the course of providing its own loading or unloading services.[16]

Aside from the fact that the problem suggested would arise only in the application of the second sentence, which is not involved in this case, the argument that the words "caused by the negligence of" in the two sentences must be given the same meaning and that they cannot have the meaning ascribed to them by petitioner's construction of the first sentence, logically leads to the conclusion that the injured

Rep. No. 92–1441 (1972), is identical to the Senate Report in all respects material to this case. Accordingly, further references will be only to the Senate Report.

[15] In many cases, of course, the shipowner whose act or omission contributed only a very small percentage of the total negligence will avoid liability on the ground of lack of causation.

[16] S. Rep. 11–12.

longshoreman should *never* be able to bring suit against the vessel unless it is the sole cause of the injury. This is a doubly absurd conclusion. It is supported by no one, and to avoid it, it is necessary only to construe the second sentence to permit a third-party suit against the vessel providing its own loading and unloading services when negligence in its nonstevedoring capacity contributes to the injury. The second sentence means no more than that all longshoremen are to be treated the same whether their employer is an independent stevedore or a shipowner-stevedore and that all stevedores are to be treated the same whether they are independent or an arm of the shipowner itself.

This leaves the question of the measure of recovery against a shipowner, whether or not it is doing its own stevedoring, when as shipowner it is only partially responsible for the negligence, but we are quite unable to distill from the face of the obviously awkward wording of the two sentences any indication that Congress intended to modify the pre-existing rule that a longshoreman who is injured by the concurrent negligence of the stevedore and the ship may recover for the entire amount of his injuries from the ship.

B

The legislative history strongly counsels against the Court of Appeals' interpretation of the statute, which modifies the longshoreman's pre-existing rights against the negligent vessel. The reports and debates leading up to the 1972 Amendments contain not a word of this concept.[17] This silence is most eloquent, for such reticence while contemplating an

---

[17] In the Senate hearings, a plaintiff's lawyer mentioned diminution of damages as a possible solution so long as the shipowner's liability for unseaworthiness was retained. The only committee member present rejected this proposal, and Congress apparently never gave it serious consideration. See Hearings on S. 2318, S. 525, and S. 1547 before the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare, 92d Cong., 2d Sess., 354–355 (1972).

important and controversial change in existing law is unlikely.[18] Moreover, the general statements appearing in the legislative history concerning § 905 (b) are inconsistent with what respondent argues was in the back of the legislators' minds about this specific issue. The Committees repeatedly refer to the refusal to limit the shipowner's liability for negligence,[19] which they felt left the vessel in the same position as a land-based third party whose negligence injures an employee.[20] Because an employee generally may recover in full from a third-party concurrent tortfeasor,[21] these statements are hardly indicative of an intent to modify the law in the respect found by the Court of Appeals. At the very least, one would expect some hint of a purpose to work such a change, but there was none.

[18] *Laborers' International Union, Local No. 1057* v. *NLRB*, 186 U. S. App. D. C. 13, 20, 567 F. 2d 1006, 1013 (1977).

The debate over § 905 (b) involved the removal of the shipowner's liability for unseaworthiness. That occurred as a concomitant of ending liability under the stevedore's warranty of workmanlike service, which was a *quid pro quo* for increasing the compensation benefits. See S. Rep. 9–10. Some Congressmen objected to removing the vessel's liability for unseaworthiness because that would deny millions of dollars of relief for longshoremen's injuries. 118 Cong. Rec. 36382–36384 (1972) (Reps. Eckhardt, Dent, and Ashley). Indeed, the concern shared by some Congressmen over any modification of third-party actions "had political ramifications which . . . resulted in forestalling any improvements in the . . . Act for over twelve years." S. Rep. 9. Those Congressmen likely would have assailed the diminution of the longshoreman's recovery in proportion to the stevedore's fault if they had any inkling that the Amendments did that.

[19] *Id.*, at 2, 5, 10.

[20] *Id.*, at 8 ("where a longshoreman or other worker covered under this Act is injured through the fault of the vessel, the vessel should be liable for damages as a third party, just as land-based third parties in non-maritime pursuits are liable for damages when, through their fault, a worker is injured"); accord, *id.*, at 10 and 11.

[21] See n. 8, *supra;* 2A Larson, *supra* n. 9, § 75.22, at 14–263; Soule, Toward an Equitable and Rational Allocation of Employee Injury Losses in Cases with Third Party Liability, 1979 Ins. Counsel J. 201, 202–208.

The shipowner denies that the legislative history is so one-sided, relying upon statements that vessels "will not be chargeable with the negligence of the stevedore or [the] employees of the stevedore." S. Rep. 11; see 577 F. 2d, at 1156 n. 2. But in context these declarations deal only with removal of the shipowner's liability under the warranty of seaworthiness for acts of the stevedore [22]—even nonnegligent ones.[23]

## C

Finally, we note that the proportionate-fault rule adopted by the Court of Appeals itself produces consequences that we doubt Congress intended. It may remove some inequities, but it creates others and appears to shift some burdens to the longshoreman.

As we have said, § 905 permits the injured longshoreman to sue the vessel and exempts the employer from any liability to the vessel for any damages that may be recovered. Congress clearly contemplated that the employee be free to sue the third-party vessel, to prove negligence and causation on the vessel's part, and to have the total damages set by the court or jury without regard to the benefits he has received or to which he may be entitled under the Act. Furthermore,

---

[22] S. Rep. 9–11.

[23] *E. g., Italia Societa per Azioni di Navigazione* v. *Oregon Stevedoring Co.,* 376 U. S. 315 (1964).

The shipowner also relies upon the Reports' reference to "comparative negligence," S. Rep. 12, but in context it is obvious that Congress alluded only, and not erroneously, see Prosser, Comparative Negligence, 51 Mich. L. Rev. 465 n. 2 (1953), to the comparative negligence of the plaintiff longshoreman and the defendant shipowner—a concept that, unlike the proposal before us today, was well established in admiralty. See S. Rep. 12; 33 U. S. C. § 905 (a); n. 2, *supra.* It would be particularly curious for Congress to refer expressly to the established principle of comparative negligence, yet say not a word about adopting a new rule limiting the liability of the shipowner on the basis of the nonparty employer's negligence.

under the traditional rule, the employee may recover from the ship the entire amount of the damages so determined. If he recovers less than the statutory benefits, his employer is still liable for the statutory amount.

Under this arrangement, it is true that the ship will be liable for all of the damages found by the judge or jury; yet its negligence may have been only a minor cause of the injury. The stevedore-employer may have been predominantly responsible; yet its liability is limited by the Act, and if it has lien rights on the longshoreman's recovery it may be out-of-pocket even less.

Under the Court of Appeals' proportionate-fault rule, however, there will be many circumstances where the longshoreman will not be able to recover in any way the full amount of the damages determined in his suit against the vessel. If, for example, his damages are at least twice the benefits paid or payable under the Act and the ship is less than 50% at fault, the total of his statutory benefits plus the reduced recovery from the ship will not equal his total damages. More generally, it would appear that if the stevedore's proportionate fault is more than the proportion of compensation to actual damages, the longshoreman will always fall short of recovering the amount that the factfinder has determined is necessary to remedy his total injury, even though the diminution is due not to his fault, but to that of his employer.[24]

But the impact of the proportionate-fault rule on the longshoreman does not stop there. Under § 933 (b), an administrative order for benefits operates as an assignment to the stevedore-employer of the longshoreman's rights against the third party unless the longshoreman sues within six months. And a corresponding judicially created lien in the employer's

---

[24] See *Zapico* v. *Bucyrus-Erie Co.*, 579 F. 2d, at 725 ("one is still left to wonder why the longshoreman injured by the negligence of a third party should recover less when his employer has also been negligent than when the employer has been without fault").

favor operates where the longshoreman himself sues.[25]  In the past, this lien has been for the benefits paid up to the amount of the recovery.[26]  And under § 933 (c), which Congress left intact in 1972, where the stevedore-employer sues the vessel as statutory assignee it may retain from any recovery an amount equal in general to the expenses of the suit, the costs of medical services and supplies it provided the employee, all compensation benefits paid, the present value of benefits to be paid, plus one-fifth of whatever might remain. Under the Court of Appeals' proportionate-fault system, the longshoreman would get very little, if any, of the diminished recovery obtained by his employer.  Indeed, unless the vessel's proportionate fault exceeded the ratio of compensation benefits to total damages, the longshoreman would receive nothing from the third-party action, and the negligent stevedore might recoup all the compensation benefits it had paid.

Some inequity appears inevitable in the present statutory scheme, but we find nothing to indicate and should not presume that Congress intended to place the burden of the inequity on the longshoreman whom the Act seeks to protect.[27] Further, the 1972 Amendments make quite clear that "the employer shall not be liable to the vessel for such damages *directly or indirectly*," 33 U. S. C. § 905 (b) (emphasis supplied),[28] and that with the disappearance of the ship's contribution and indemnity right against the stevedore the latter

---

[25] See *The Etna,* 138 F. 2d 37 (CA3 1943).

[26] The original Fourth Circuit panel opinion would have made the shipowner liable for an amount equal not just to his proportionate fault, but also to the employer's lien.  558 F. 2d, at 194.  The en banc court refused to make the vessel liable for the additional amount of the lien and declined to rule on any alteration of the lien since the employer was not party to the suit.  577 F. 2d, at 1156.

[27] Cf. *Northeast Marine Terminal Co.* v. *Caputo,* 432 U. S., at 279.

[28] "It is the Committee's intention to prohibit such recovery under any theory including, without limitation, theories based on contract or tort."

should no longer have to appear routinely in suits between long-shoreman and shipowner.[29]   Consequently, as we have done before, we must reject a "theory that nowhere appears in the Act, that was never mentioned by Congress during the legislative process, that does not comport with Congress' intent, and that restricts . . . a remedial Act . . . ." *Northeast Marine Terminal Co.* v. *Caputo,* 432 U. S., at 278–279.

## II

Of course, our conclusion that Congress did not intend to change the judicially created rule that the shipowner can be made to pay all the damages not due to the plaintiff's own negligence does not decide whether we are free to and should change that role so as to make the vessel liable only for the damages in proportion to its own negligence.   Indeed, some *amici* in support of respondent share the view that Congress did not change the rule but argue that this Court should do so.   We disagree.

Though we recently acknowledged the sound arguments supporting division of damages between parties before the court on the basis of their comparative fault, see *United States* v. *Reliable Transfer Co.,* 421 U. S. 397 (1975),[30] we

---

S. Rep. 11; see *Pope & Talbot, Inc.* v. *Hawn,* 346 U. S., at 412 ("reduction of [the shipowner's] liability at the expense of [the employer] would be the substantial equivalent of contribution"); *Dodge* v. *Mitsui Shintaku Ginko K. K. Tokyo,* 528 F. 2d, at 673; Steinberg, The 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act: Negligence Actions by Longshoremen against Shipowners—A Proposed Solution, 37 Ohio St. L. J. 767, 792–793 (1976).

[29] See S. Rep. 9 ("much of the financial resources which could better be utilized to pay improved compensation benefits were now being spent to defray litigation costs" of stevedores in third-party actions).

[30] As noted in n. 8, *supra,* the general rule is that a person whose negligence is a substantial factor in the plaintiff's indivisible injury is entirely liable even if other factors concurred in causing the injury.   Normally, the chosen tortfeasor may seek contribution from another concurrent tortfeasor.   If both are already before the court—for example, when the

are mindful that here we deal with an interface of statutory and judge-made law. In 1972 Congress aligned the rights and liabilities of stevedores, shipowners, and longshoremen in light of the rules of maritime law that it chose not to change.[31] "One of the most controversial and difficult issues

---

plaintiff himself is the concurrent tortfeasor or when the two tortfeasors are suing each other as in a collision case like *Reliable Transfer*—a separate contribution action is unnecessary, and damages are simply allocated accordingly. But the stevedore is not a party and cannot be made a party here, so the *Reliable Transfer* contribution shortcut is inapplicable. Contribution remedies the unjust enrichment of the concurrent tortfeasor, see Leflar, Contribution and Indemnity Between Tortfeasors, 81 U. Pa. L. Rev. 130, 136 (1932), and while it may sometimes limit the ultimate loss of the tortfeasor chosen by the plaintiff, it does not justify allocating more of the loss to the innocent employee, who was not unjustly enriched. See also H. Hart & A. Sacks, The Legal Process: Basic Problems in the Making and Application of Law 525 (tent. ed. 1958). Our prior cases recognize that. Even before *Reliable Transfer*, we apportioned damages between vessels that collided and sued one another. *Reliable Transfer* merely changed the apportionment from equal division to division on the basis of relative fault. But we did not upset the rule that the plaintiff may recover from *one* of the colliding vessels the damage concurrently caused by the negligence of both. Compare *Reliable Transfer Co.* (apportionment of damages on basis of relative fault between plaintiff and defendant who concurrently caused grounding), and *The Schooner Catharine* v. *Dickinson*, 17 How. 170 (1855) (equal apportionment of damages between libelant and respondent vessels where both at fault in collision), with *The Atlas*, 93 U. S. 302 (1876) (in suit by insurer of cargo against one of two ships whose concurrent fault caused collision, the insurer is entitled to recover in full, despite the rule of equal apportionment, because the insurer is not a wrongdoer), and *The Juniata*, 93 U. S. 337, 340 (1876) (same; if respondent vessel has any rights against nonparty vessel, they "must be settled in another proceeding").

[31] Of course, our decision does not necessarily have any effect on situations where the Act provides the workers' compensation scheme but the third-party action is not governed by principles of maritime law. Cf. *Dawson* v. *Contractors Transp. Corp.*, 151 U. S. App. D. C. 401, 467 F. 2d 727 (1972) (private employees in the District of Columbia). See also *infra*, at 273.

which [Congress was] required to resolve . . . concern[ed] the liability of vessels, as third parties, to pay damages to longshoremen who are injured while engaged in stevedoring operations." S. Rep. 8. By now changing what we have already established that Congress understood to be the law,[32] and did not itself wish to modify, we might knock out of kilter this delicate balance. As our cases advise, we should stay our hand in these circumstances. *Cooper Stevedoring Co.* v. *Fritz Kopke, Inc.*, 417 U. S., at 112; *Halcyon Lines* v. *Haenn Ship Ceiling & Refitting Corp.*, 342 U. S., at 285–286. Once Congress has relied upon conditions that the courts have created, we are not as free as we would otherwise be to change them. A change in the conditions would effectively alter the statute by causing it to reach different results than Congress envisioned. Indeed, Congress might have intended to adopt the existing maritime rule even for third-party actions under the Act that are not within the admiralty jurisdiction, though we need not and do not reach that issue today.

Accordingly, we reverse the judgment below and remand for proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE POWELL took no part in the consideration or decision of this case.

MR. JUSTICE BLACKMUN, with whom MR. JUSTICE MARSHALL and MR. JUSTICE STEVENS join, dissenting.

The jury in this case found that the shipowner, the stevedore, and the longshoreman were each partially responsible

---

[32] Respondent seeks support for its position in the results of "a meeting attended by representatives of labor and industry, Committee members and Committee staff." Brief for Respondent 16. Respondent asserts that the participants at this meeting arrived at a compromise whereby the courts were to fashion the rules to be applied in concurrent-fault situations. No official record of this meeting exists, and subsequent legislative history does not so much as hint at such a compromise. We are not told

for the latter's (petitioner Stanley Edmonds) injury. A member of the ship's crew instructed Edmonds to remove a jack from the rear wheel of a large cargo container. As Edmonds went behind the container to remove the jack, another longshoreman backed a truck into the container, causing it to roll backwards and pin Edmonds against the bulkhead. The jury concluded that the shipowner, as the employer of the crewman, was 20% responsible for the accident; the stevedore, as the employer of the longshoreman driving the truck, was 70% responsible; and Edmonds himself was 10% responsible.

The Court holds that the shipowner, who was 20% negligent, must pay 90% of Edmonds' damages. Edmonds, because of his comparative negligence, must absorb 10% of the damages himself. But the stevedore, who, the jury determined, was 70% at fault, will recoup its statutory compensation payments out of the damages payable to Edmonds, and thus will go scot-free.[1]

The Court does not, and indeed could not, defend this result on grounds of reason or fairness. Today's ruling means that concurrently negligent stevedores will be insulated from the obligation to pay statutory workmen's compensation benefits, and thus will have inadequate incentives to provide a safe working environment for their employees. It also means that shipowners in effect will be held vicariously liable for the negligence of stevedores, and will have to pay damages far out of proportion to their degree of fault. Nor does the Court suggest that its holding is compelled by the language or legis-

---

that the Senators and Representatives who voted for the Amendments when they reached the floor knew of the compromise, and we can only presume that they acted with the existing state of the law, not the probability of future judicial change, in mind.

[1] As of December 18, 1978, the stevedore's insurance company had paid Edmonds a total of $49,152 in statutory benefits. Brief for Liberty Mutual Insurance Co. as *Amicus Curiae* 2. Under the judicially created lien sanctioned by the Court's opinion, *ante*, at 269–270, the stevedore's insurer will recover this entire sum out of the $90,000 damages awarded to Edmonds.

lative history of § 5 (b) of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U. S. C. § 905 (b). The Court appears to advance two justifications for its decision: first, that principles of comparative negligence did not apply under the traditional law of admiralty, and Congress intended to preclude judicial modification of that law when it passed the 1972 Amendments to the LHWCA; and second, that a rule of comparative negligence would be unfair to injured longshoremen. Since I find both purported justifications wholly inadequate to support the Court's decision, I respectfully dissent.

I

The Court begins with the proposition that, under the law maritime as it existed in 1972, the shipowner could not reduce its liability because of the comparative negligence of the stevedore: I am not entirely convinced. None of the decisions cited by the Court, *ante,* at 260 n. 7, stands for this proposition; the cases relied upon all concern the conceptually distinct problem—to which the Court has given varying answers—of whether there is a right of contribution among joint tortfeasors.[2] I am willing to assume, however, for purposes of argument, that the Court has correctly stated the "traditional" admiralty rule.

The Court next states that Congress itself did not impose a rule of comparative negligence when it adopted § 905 (b) in 1972. Again, I am not altogether sure. As Chief Judge Haynsworth demonstrated in his opinion for the en banc court

[2] Technically, there is no issue of "joint and several" liability here, for the stevedore has statutory immunity from tort liability. 33 U. S. C. § 905 (a). Nor are the policies behind the common-law rule of joint and several liability applicable. The common-law rule serves largely to protect plaintiffs from defendants who are unable to pay judgments entered against them. The LHWCA, however, provides safeguards to ensure the payment of compensation benefits. 33 U. S. C. § 932. There is little need, therefore, to make the shipowner liable for full damages to protect the longshoreman from impecunious stevedores.

below, there is some tension between the first and second sentences of § 905 (b).[3]   These sentences are most easily reconciled if one assumes that Congress was thinking in terms of comparative negligence.   The Court points out that there are other, less plausible, ways of reconciling the two sentences. Although I feel there is room for debate on this question, I am again willing to assume, for purposes of argument, that Congress did not impose a rule of comparative negligence in third-party suits under the LHWCA.

I cannot agree, however, with the Court's third proposition: that Congress intended to *prohibit* this Court from fashioning a rule of comparative negligence in suits for damages by a longshoreman against the shipowner.   It is well established that courts exercising jurisdiction in maritime affairs have broad powers of interstitial rulemaking.   As the Court stated in *United States* v. *Reliable Transfer Co.*, 421 U. S. 397, 409 (1975), "the Judiciary has traditionally taken the lead in formulating flexible and fair remedies in the law maritime, and 'Congress has largely left to this Court the responsibility for fashioning the controlling rules of admiralty law.'   *Fitzgerald*

---

[3] The first sentence reads: "In the event of injury to a person covered under this chapter *caused by the negligence* of a vessel, then such person . . . may bring an action against such vessel as a third party . . . ." The second sentence reads: "If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was *caused by the negligence* of persons engaged in providing stevedoring services to the vessel." (Emphasis added.)   If the phrase "caused by the negligence" in both sentences is given the same meaning, and interpreted to mean "caused by any negligence whatsoever," then an employee of an independent stevedoring company could recover full damages under the first sentence if the shipowner was 1% negligent and the stevedore 99% negligent.   A longshoreman hired directly by the shipowner, however, would be denied any recovery at all under the second sentence if persons involved in doing stevedoring work committed as little as 1% of the negligence, even if the shipowner was otherwise 99% negligent.   If the statutory phrase "caused by the negligence" is interpreted to import the notion of comparative negligence, this anomaly does not arise.

v. *United States Lines Co.,* 374 U. S. 16, 20." I find nothing in the language or legislative history of § 905 (b) that indicates Congress intended to reverse this presumption with respect to third-party actions under the LHWCA.

The Court suggests that Congress, in enacting § 905 (b), "aligned the rights and liabilities of stevedores, shipowners, and longshoremen" on the specific assumption that the shipowner would not be allowed to reduce its liability because of the stevedore's comparative negligence. *Ante,* at 272. The legislative history belies this notion. Congress had two narrow objectives in mind in enacting § 905 (b) in 1972: to overcome this Court's decision in *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85 (1946), and its decision in *Ryan Stevedoring Co.* v. *Pan-Atlantic S.S. Corp.,* 350 U. S. 124 (1956). See S. Rep. No. 92–1125, pp. 8–11 (1972). These decisions had created a form of circuitous liability whereby the longshoreman, under *Seas Shipping,* sued the shipowner under a theory of unseaworthiness; the shipowner, under *Ryan Stevedoring,* obtained full indemnity from the stevedore; and the stevedore ended up paying actual damages rather than statutory compensation. Congress overruled the strict-liability theory of *Seas Shipping* to ensure that "[t]he vessel will not be chargeable with the negligence of the stevedore or employees of the stevedore." S. Rep. No. 92–1125, *supra,* at 11. It eliminated the *Ryan Stevedoring* action for indemnification because if "the vessel's liability is to be based on its own negligence, and the vessel will no longer be liable under the unseaworthiness doctrine for injuries which are really the fault of the stevedore, there is no longer any necessity for permitting the vessel to recover the damages for which it is liable to the injured worker from the stevedore . . . ." S. Rep. No. 92–1125, *supra,* at 11. These statements of legislative purpose are as consistent, or more consistent, with a system of comparative negligence, than with a congressional assumption that the shipowner would be fully liable for the concurrent negligence of the stevedore.

The legislative history indicates that, if anything, Congress intended to preserve the role of the federal courts in filling in the contours of § 905 (b). The House and Senate Reports state that the liability of a shipowner in an action brought by a longshoreman should be analogous to that which "would render a land-based third party in non-maritime pursuits liable under similar circumstances." S. Rep. No. 92–1125, *supra,* at 11. The Report emphasizes, however, that this does not mean state tort law is to govern third-party negligence suits against the vessel.

> "[T]he Committee does not intend that the negligence remedy authorized in the bill shall be applied differently in different ports depending on the law of the State in which the port may be located. The Committee intends that legal questions which may arise in actions brought under these provisions of the law shall be determined as a matter of Federal law. In that connection, the Committee intends that the admiralty concept of comparative negligence, rather than the common law rule as to contributory negligence, shall apply in cases where the injured employee's own negligence may have contributed to causing the injury. Also, the Committee intends that the admiralty rule which precludes the defense of 'assumption of risk' in an action by an injured employee shall also be applicable." *Id.*, at 12.

In other words, Congress specifically reaffirmed the admiralty law tradition in the 1972 Amendments, and intended that this Court would continue to resolve "legal questions which may arise in actions brought under these provisions" in accordance with that tradition.

In short, in this case, as in *Reliable Transfer,* 421 U. S., at 409, "[n]o statutory or judicial precept precludes a change in the rule [that the shipowner is fully liable for the concurrent negligence of the stevedore], and indeed a proportional fault rule would simply bring recovery [as between the steve-

dore and shipowner] into line with the rule of admiralty law long since established [as between the longshoreman and the shipowner]."

## II

I am also convinced that no injustice to injured longshoremen would result from a rule of comparative negligence. A rule of comparative negligence in no case would reduce the longshoreman's total award below his statutory workmen's compensation benefits.[4] The rule of comparative negligence would affect only the relative proportion of statutory benefits and damages in the longshoreman's total compensation package. In the present case, for example, a rule of comparative negligence would mean the longshoreman would receive 20% damages and 80% statutory benefits, as opposed to 90% damages and 10% statutory benefits.

At first blush, it might appear that there is something unfair about reducing the total potential award of the longshoreman in this manner. But when the different purposes of the statutory compensation scheme and the third-party action for negligence are considered, it can be seen that this result is fully consistent with the policies of the statute. The LHWCA statutory compensation scheme, like other workmen's compensation plans, is based on a compromise. The longshoreman accepts less than full damages for work-related injuries. In exchange, he is guaranteed that these statutory benefits will be paid for every work-related injury without regard to fault. The third-party tort action, in contrast, embodies an element of risk. The longshoreman faces the prospect of an increased award, but also the possibility of receiving nothing if the shipowner is found not to have been negligent.

---

[4] Those benefits, after the 1972 Amendments, are relatively generous. The LHWCA claimant receives two-thirds of his lost wages, free of income taxes, and adjusted periodically for inflation, 33 U. S. C. §§ 906, 908; his medical and rehabilitation expenses are paid, § 907; and his attorney's fees are paid. § 928.

The problem of perceiving the equities arises because of the interaction of the compensation scheme and the tort scheme. If a longshoreman is injured while working on a vessel, and the stevedore is 100% at fault, no one considers it unjust that the longshoreman receives only statutory benefits. The award of less than full damages is the *quid pro quo* for the guarantee of recovery without regard to the employer's fault. Similarly, if a longshoreman is injured and the shipowner is 100% to blame, everyone agrees that it is fitting and proper for the shipowner to pay full damages. The Court, however, perceives "some inequity" in not allowing the longshoreman to obtain full damages when the shipowner has been determined to be only 20% negligent. Presumably, this same "inequity" would result if the longshoreman did not obtain full damages when the shipowner was 10% or 5% or even 1% negligent. This is not equity, however, but a windfall. Under the Court's rule, the longshoreman is guaranteed statutory compensation without regard to fault *and* is given a risk-free chance to obtain full damages if the shipowner is found negligent in even the slightest degree. A more evenhanded equity, in my view, would be for the longshoreman to recover damages for that portion of the injury for which the shipowner's negligence is responsible, and to recover the balance in statutory compensation, representing that portion of the injury for which the longshoreman is guaranteed an award regardless of fault.[5]

### III

In sum, this case presents the relatively common situation where a statute is open to two interpretations, and the legislative history, although instructive as to the overriding purposes of Congress, provides no specific guidance as to which

---

[5] See Coleman & Daly, Equitable Credit: Apportionment of Damages According to Fault in Tripartite Litigation Under the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act, 35 Md. L. Rev. 351 (1976).

interpretation Congress would have adopted if it had addressed the precise issue. Our duty, in such a case, is to adopt the interpretation most consonant with reason, equity, and the underlying purposes Congress sought to achieve. If we are wrong, Congress can, as it has in the past, step in and adopt some other solution. But the problem should not be resolved by complacently accepting an unfair and unjust result, on the assumption the choice between the two interpretations ideally should be made by Congress. Under that approach, the Court and the country at large may end up with nothing more than an unfair and unjust result.