Ennis BUSH, Plaintiff-Appellee,

v.

OCEANS INTERNATIONAL et al., Defendants,

Sumitomo Trust Bank Co., Ltd., Defendant-Appellant.

No. 78-3810.

United States Court of Appeals, Fifth Circuit.

July 11, 1980.

---

Robert M. Julian, Houston, Tex., for defendant-appellant.

Thomas F. Rugg, Port Arthur, Tex., for plaintiff-appellee.

Before AINSWORTH and GEE, Circuit Judges, and HUNTER,* District Judge.

EDWIN F. HUNTER, Jr., District Judge:

Plaintiff was injured on October 16, 1974, while employed as a longshoreman on defendant's vessel which was docked at Port Arthur, Texas. The longshoreman received benefits for that injury from his employer under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq. In addition, he brought this negligence action against the shipowner on October 11, 1977. The original defendant, Oceans International, did not answer the complaint, but filed a motion for summary judgment on the grounds that it did not own, operate or control the vessel involved. Plaintiff filed an amended complaint on February 23, 1978, adding three additional defendants, including Sumitomo Trust Bank Company. Sumitomo filed an answer on March 15, 1978, in which it admits that it

---

* District Judge, of the Western District of Louisiana, sitting by designation.

owned and operated the vessel. The complaint was dismissed as to the remaining defendants.

██ Sumitomo filed a motion for summary judgment seeking dismissal of plaintiff's claim as time-barred by Texas' two year statute of limitations. The motion was denied but pursuant to 28 U.S.C. § 1292(b), the district judge certified the limitations issue to this court:[1]

> "Is the cause of action by a longshoreman injured on October 16, 1974 on a vessel within the territorial waters of the State of Texas, governed by the Texas Two Year Statute of Limitations, the Jones Act Three Year Statute of Limitations, or by the Doctrine of Laches."

Prior to the 1972 amendments to the Act, state statutes of limitation did not operate to bar injury or death actions brought on behalf of longshoremen. The timeliness of the action was measured by the equitable doctrine of laches, which American admiralty courts derived from English authority, *The Key City*, 81 U.S. (14 Wall.) 653, 20 L.Ed. 896 (1871), and applied to longshoremen's suits founded upon both unseaworthiness and negligence. *Watz v. Zapata Off-Shore Company*, 500 F.2d 628 (5th Cir. 1974); *Watz v. Zapata Off-Shore Company*, 431 F.2d 100 (5th Cir. 1970); *Flowers v. Savannah Machine and Foundry Co.*, 310 F.2d 135 (5th Cir. 1962).

Congress acted in 1972, among other things,[2] to abolish the longshoreman's right of action against the ship on unseaworthiness claims, and it abolished the ship's right of contribution or indemnity from the stevedore. The right of action against the ship for injuries caused by the ship's own negligence was expressly preserved. The critical section of the amended statute is 905(b), 33 U.S.C. 905(b), and reads:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

It is defendant's contention that in a post-1972 Amendments case, since unseaworthiness is no longer available as a basis for recovery, it is illogical to apply the timeliness concept controlling injuries at sea (i. e., laches) rather than the rules which would otherwise be applied to a diversity negligence action (i. e., the Texas two year statutory limitation period). More specifically, Sumitomo seeks support for its posi-

---

1. No evidence was adduced below on the assertion that the claim should be barred by the doctrine of laches and consequently no position on the merits of such a contention is intended in this opinion. The same is true of a possible Rule 15(c) problem. Rule 15(c) F.R.Civ.P. expressly provides that an amendment changing the parties relates back to the date of the original pleadings if certain conditions are satisfied. This alters the generally accepted rule that new defendants cannot be added after the applicable limitations period has expired.

2. The amendments also increased compensation benefits, expanded the Act's geographic coverage, and instituted a new means of adjudicating compensation cases. Robertson, *Jurisdiction, Shipowner Negligence, and Stevedore Immunities under the 1972 Amendments to the Longshoremen's Act*, 28 Mercer L.Rev. 515, 516 (1977).

tion in the following observation from the Report of the House Education and Labor Committee:

> The purpose of the amendments is to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore, insofar as bringing a third party damage action is concerned, and not to endow him with any special maritime theory of liability or cause of action under whatever judicial nomenclature may be called, such as "unseaworthiness," "non-delegable duty," or the like. H.R. Rep.No.1441, 92nd Cong., 2nd Sess., reprinted in (1972) U.S.Code Cong. and Admin.News, pp. 4698, 4703.

In context, the above declaration deals only with the removal of the shipowner's liability under the warranty of seaworthiness for acts of the stevedore. Moreover, the same Committee counsels against Sumitomo's interpretation of legislative intent when it observes:

> Finally, the Committee does not intend that the negligence remedy authorized in the bill shall be applied differently in different ports depending on the law of the State in which the port may be located. The Committee intends that legal questions which may arise in actions brought under these provisions of the law shall be determined as a matter of Federal law. (*Id.* at 4705).

This case presents the relatively common situation where a statute is arguably open to two interpretations and the legislative history, although clear as to the overriding purposes, provides little guidance as to which interpretation Congress would have adopted if it had addressed the precise issue. Twice within the last year the Supreme Court of the United States has encountered a similar problem concerning these same 1972 amendments.

The Supreme Court in *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521, reversed a Court of Appeals holding that the 1972 amendments had altered a traditional admiralty rule by making the shipowner liable only for that share of the total damages equivalent to the ratio of its fault to the total fault. The Court wrote:

> The legislative history strongly counsels against the Court of Appeals' interpretation of the statute, which modifies the longshoreman's pre-existing rights against the negligent vessel. The reports and debates leading up to the 1972 amendments contain not a word of this concept. This silence is most eloquent, for such reticence while contemplating an important and controversial change in existing law is unlikely.

> &ast; &ast; &ast; &ast; &ast; &ast;

> Consequently, as we have done before, we must reject a "theory that nowhere appears in the Act, that was never mentioned by Congress during the legislative process, that does not comport with Congress' intent, and that restricts &ast; &ast; &ast; a remedial Act &ast; &ast; &ast;."

The Supreme Court, in March of 1980, was again confronted with an interpretation of the 1972 Amendments. *Bloomer v. Liberty Mutual Insurance Company, etc.,* —— U.S. ——, ——, 100 S.Ct. 925, 930, 63 L.Ed.2d 215 (1980). There, the injured longshoreman argued that the Amendments so altered the equities as to compel a holding that a stevedore must pay a proportionate share of the longshoreman's expenses in a third party action brought against the shipowner. In light of the Act and its legislative history, the Court, citing *Edmonds*, quickly rejected this contention:

> In 1972 Congress was informed of, but did not alter, the uniform rule that the longshoreman's legal fees would be paid by the longshoreman alone. In these circumstances, we are reluctant to change that rule on our own.

▪ The 1972 Amendments were a complex bargain struck between shipowners, stevedores and longshoremen. If Congress had thought it was abolishing the defense of laches, we would have expected vigorous discussion by both congressmen and interested witnesses. At the very least, one would expect some hint of a purpose to work such a change, but there was none. We reject defendants contention that Con-

gress intended, *sub silentio*, to jettison the admiralty principles of laches, and adhere to the logic expressed by Judge Haight of the Southern District of New York:

> \* \* \* Congress specifically declared its intention to retain the admiralty principles of comparative negligence and preclusion of the defense of assumption of the risk. Given those declarations, it is difficult for defendant to argue that Congress intended, *sub silentio*, to jettison the admiralty principle of laches. And that difficulty is compounded when one considers the practical consequences of imposing upon longshoremen's suits against vessels the statutes of limitations of the several states. Because those statutes differ from state to state, the intended objective of uniformity among the federal courts would be undermined.

*Vasquez v. Intermaritime Carriers*, 439 F.Supp. 688, 691 (S.D.N.Y.1977).

Our response to the certification of the district court is precise. The timeliness of a longshoreman's negligence action against the shipowner must be determined under the traditionally applied doctrine of laches. The analogous limitation period to be utilized in determining whether laches bars this action is the three-year Jones Act limitation.[3] In sum, *Flowers v. Savannah Machine and Foundry Company*, 310 F.2d 135 (5th Cir. 1962), remains viable.[4]

REMANDED.

---

**3.** An equitable doctrine, "laches is not, like limitation, a mere matter of time; but principally a question of the [equity or] inequity of permitting the claim to be enforced." *Holmberg v. Armbrecht*, 1946, 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743. Rather than marking an absolute cut-off date beyond which injured parties may no longer effectively bring suit, the analogous limitation period determines the burden of proving or disproving inexcusable delay and resulting prejudice. *Barrois v. Nelda Faye, Inc.*, 597 F.2d 881 (5th Cir. 1979).

**4.** The rationale of the Supreme Court cases and this opinion is that a change in the status quo should not be inferred unless Congress has unmistakably indicated a wish to the contrary. It now appears that Congress may be prepared to enact legislation which will in the future be dispositive of the issues presented in this appeal. The House of Representatives on February 11, 1980 unanimously passed House Resolution 3748, which provides "for a uniform national 3 year statute of limitations in actions to recover damages for personal injury or death, arising out of a maritime tort." This legislation is now pending before an appropriate Senate committee.