97 F.3d 1452
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Paul SORENSON, Plaintiff-Appellant-Cross-Appellee,
and
Hutson Company, Inc., Intervening Plaintiff-Appellee,
v.
ROBERT B. MILLER & ASSOCIATES, INC.,
Defendant-Appellee-Cross-Appellant.
 Nos. 95-5085, 95-5086.
 United States Court of Appeals, Sixth Circuit.
 Sept. 10, 1996.
 
 Before: MERRITT, Chief Circuit Judge; ENGEL and RYAN, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 Plaintiff appeals and Defendant cross-appeals the jury verdict in this personal injury suit. Paul Sorenson, a laborer at a barge terminal, sued the operator of a barge, Robert B. Miller & Associates ("Miller"), for injuries sustained when he fell fifteen feet into the hull of the barge while closing its covers. The jury found the defendant, Miller, only 10% at fault and assessed the remaining 90% of fault to Sorenson himself. Plaintiff appeals the District Court's denial of a new trial, and defendant cross-appeals the District Court's refusal to grant judgment as a matter of law in its favor. We agree with the District Court that the jury's verdict was not incorrect as a matter of law, and we therefore AFFIRM the judgment in its entirety.
 
 I. Facts
 
 2
 Paul Sorenson, a nineteen year-old laborer, worked for the Hutson Company ("Hutson"), a fertilizer company, at its river terminal in Kentucky. Sorenson had been hired to sweep and clean around the terminal and occasionally to help open and close the covers on the barges that docked at the terminal. On May 2, 1991, Sorenson was told to assist another employee in closing the covers on Barge 219 which was operated by the defendant, Miller.
 
 
 3
 In order to provide access to the inside of the barge, Barge 219, a "roll-top" barge, has eight large, heavy steel covers that are about 30' X 22' each and weigh four to five tons each. The covers rest on rollers so that they can be moved under and over each other to the "open" and "closed" positions. Pairs of covers are held together with connections called chain binders. Sorenson was evidently standing in a dangerous place on top of the covers. While Sorenson was helping close the covers, two of them separated, and he fell fifteen feet to the floor of the barge. Sorenson alleges that the chain binders were in a rusted, deteriorated condition and that they broke, causing his fall. Miller, on the other hand, contends that there was no evidence that the binders were even engaged before the accident, or that anything other than Sorenson's and Hutson's negligence caused the fall.
 
 
 4
 As a result of the accident, Sorenson sustained severe injury to his spine and became paralyzed from the knees down. He had several surgeries as well as treatment for urinary tract infections and skin irritations related to his condition. Sorenson stated that his medical expenses at the time of trial totalled just over $300,000. He summarized the medical bills in his testimony but did not offer the bills themselves into evidence. Miller challenged the necessity of some of the expenses at trial. Sorenson also claimed that his projected medical and care expenses were over $700,000 and that his estimated earning loss was over $1.4 million. Miller also challenged these estimates as excessive.
 
 
 5
 At trial, Sorenson introduced William McNeal as an expert in barge construction and in the safety aspects of barges. The court conducted a voir dire to determine whether McNeal had sufficient experience with barges, and roll-top barges in particular, to render an expert opinion on them. After voir dire, the court determined that he could not speak reliably to the workings or safety of roll top barges and limited his testimony to his general knowledge of barges and to what he observed when he inspected Barge 219. The court similarly conducted a voir dire for defendant's expert, Mr. Kroll, and determined that he was qualified to speak to barge construction but not to barge safety.
 
 
 6
 The jury returned a verdict of $250,000 but apportioned 90% of the fault to the plaintiff and 10% to the defendant, resulting in a net award of $25,000. The District Court denied both plaintiff's motion for a new trial and defendant's motion for Judgment as a Matter of Law. This appeal and cross-appeal followed.
 
 II. Analysis
 A. Expert Testimony
 
 7
 Plaintiff's first claim is that the District Court misapplied Federal Rule of Evidence 702 when it excluded the testimony of his expert, William McNeal, on barge cover mechanisms and barge safety matters, limiting his testimony to his personal inspection of the barge. Plaintiff contends that the District Court misread the case law interpreting Rule 702, failing to distinguish between the foundation required for experts giving scientific testimony as opposed to those offering technical or specialized knowledge. Specifically, plaintiff alleges that the court improperly required that McNeal be familiar with "empirical studies" of roll-top barges when other indicators of technical and experiential knowledge are sufficient under Rule 702.
 
 
 8
 Plaintiff is correct that the test to qualify a witness claiming scientific expertise differs from that for a witness offering technical or specialized knowledge. This point of law is sometimes overlooked when courts focus on Daubert v. Merrell Dow Pharmaceuticals, Inc., 113 S.Ct. 2786 (1993), the leading Supreme Court case on the admissibility of expert testimony, which replaced the long-standing Frye test. Daubert lists factors to be considered in assessing the reliability of scientific testimony, including the availability of empirical studies in the field. As this Court has recognized, however, Daubert is "only of limited help" in assessing technical or experiential expertise. Berry v. City of Detroit, 25 F.3d 1342 (6th Cir.1994), cert. denied, 115 S.Ct. 902 (1995).
 
 
 9
 In Berry, this Court distinguished scientific and non-scientific expert testimony with the following example:
 
 
 10
 if one wanted to explain to a jury how a bumblebee is able to fly, an aeronautical engineer might be a helpful witness ...
 
 
 11
 On the other hand, if one wanted to prove that bumblebees always take off into the wind, a beekeeper with no scientific training at all would be an acceptable expert if a proper foundation were laid for his conclusions.
 
 
 12
 Id. at 1349-50. According to Berry, a proper foundation for a technical expert demonstrates "first hand familiarity" with the subject of the testimony. Id. A witness could demonstrate such familiarity with an "empirical" example, such as the witness's observation that something happened "x" times before an event and "y" times after. Id.
 
 
 13
 Keeping in mind that the claim in this case is that the roll-top covers and their latches were defective, we find that the District Court complied with the Berry rule and this ruling was well within the discretion vested in trial judges. The court conducted an extensive voir dire in which defense counsel specifically challenged McNeal's familiarity with roll top barges and their latch mechanisms. McNeal admitted that he had never constructed roll-top barges or their connections. The court asked how many barges in all the expert had constructed and the number of these that were roll-top. McNeal stated that he had worked for two years and constructed a total of only 15-20 barges, again, none of which were roll-top. On the basis of McNeal's own testimony, therefore, the court properly concluded that he did not have sufficient experience to be a reliable expert witness in certain areas. Plaintiff's claim that the District Court excluded the testimony "based solely on the fact that [McNeal] had not performed empirical studies in the field of barge safety" is misleading given the whole record on this issue. The District Court's decision to limit McNeal's testimony was proper.
 
 B. The Verdict Form
 
 14
 Plaintiff's second claim is that the District Court erred by giving the jury a misleading verdict form. Plaintiff did not raise this issue below, however, and our review is therefore limited to the "obvious error" standard. Rodgers v. Fisher Body Division, General Motors Corp., 739 F.2d 1102, 1106 (6th Cir.1984), cert. denied, 470 U.S. 1054 (1985).
 
 
 15
 The verdict form required the jury to apportion fault between Sorenson and Miller and instructed that the two figures must add up to 100 percent. The form provided no opportunity for the jury to apportion fault to Hutson, Sorenson's employer, even though the question of Hutson's negligence was a major issue at trial. Sorenson contends that the jury's assignment of 90% of the fault to him includes its estimate of Hutson's negligence.
 
 
 16
 Such an error, if it did occur, would reduce Miller's liability to Sorenson and would be improper as a matter of law. Under established maritime law, a shipowner who is partially at fault for a longshoreman's injury is liable for all damages not caused by the plaintiff's own negligence, and the plaintiff's negligence does not include any negligence on the part of his employer. Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256 (1979). Thus,
 
 
 17
 a longshoreman may recover the total amount of his damages from the vessel if the latter's negligence is a contributing cause of his injury, even if the stevedore, whose limited liability is fixed by statute, is partly to blame.
 
 
 18
 Id. at 264. If the verdict form caused the jury to assign Hutson's negligence to Sorenson, it would be clear error.
 
 
 19
 We cannot, however, blindly accept plaintiff's conclusion that the jury was mislead by the verdict form. The case law is clear that jury instructions, of which the verdict form is a part, "are to be considered as a whole." Carruba v. Transit Casualty Co., 443 F.2d 260, 264 (6th Cir.1971). In his instructions to the jurors, the judge repeatedly reminded them that they were not to consider Hutson as a party in the case. The court specifically told the jury: "In considering the claim of contributory negligence, you must bear in mind that Mr. Sorenson is not charged with any negligent conduct of his employer, the Hutson Company, or of any of his fellow employees. The plaintiff is only chargeable with his own conduct." (emphasis added).
 
 
 20
 We recognize that a verdict form may shape a jury decision more than verbal jury instructions, and we are troubled by the potential for confusion created by the form used here. Nonetheless, having reviewed the entire transcript of the trial and having read the jury instructions in their totality, we find that the error in the verdict form, if any, does not rise to the level of obvious error required to overturn this jury's verdict.
 
 3. Damages
 
 21
 Plaintiff's final claim is that the jury's determination of damages in the amount of $250,000 was grossly inadequate and lacking any rational justification. In order for an appellate court to set aside a damages determination by a jury that the District Court refused to overturn, the award must be "contrary to all reason." Lewis v. Sears, Roebuck & Co., 845 F.2d 624, 635 (6th Cir.1988). A damage award is essentially a finding of fact and will only be overturned if it "manifests plain injustice." Meyers v. Cincinnati, 14 F.3d 1115, 1119 (6th Cir.1994). In this case, it does not appear that Plaintiff is able to overcome the high presumption against setting aside the jury verdict.
 
 
 22
 Plaintiff contends that the jury's award was grossly inadequate because he submitted damage figures ranging from $2.5 to $4 million. These figures, however, assume that the jury would award the maximum sought in all categories of damages, including future pain and suffering. While it is true that Sorenson suffered serious injury to his spine and is paralyzed from the knees down, he lives alone, is able to drive a car, and continues to enjoy many different activities. He was characterized by his own doctor as "very employable," J.A. at 379, and is considering taking college courses in writing and business. These factors may have moved the jury to reach a lower overall damage award.
 
 
 23
 Furthermore, Sorenson failed to provide compelling proof of his specific damage submissions, including medical costs. For example, Sorenson's doctor stated in her deposition that she had anticipated that he would require only four to six weeks of rehabilitation but that he stayed at the facility for six months due in part to his own "motivational problems." J.A. 372-376. Sorenson's "life care expert" faltered under sharp questioning by defense counsel about her assessment of Sorenson's needs. In short, while the jury verdict may have been on the low end given the severity of plaintiff's injury, it is not "contrary to all reason," and it must stand.
 
 4. Defendant's Cross-appeal
 
 24
 Finally, defendant contends on cross-appeal that it was entitled to judgment as a matter of law after the trial because plaintiff failed entirely to meet its burden of proving defendant's negligence or causation of the accident. Defendant, however, blatantly misreads Supreme Court precedent explaining a vessel owner's duty to a stevedore and its longshoremen. See Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156 (1981) (shipowner has duty to exercise care with respect to "ship's gear, equipment, tools, and work space" before turning vessel over to stevedore). The District Court correctly instructed the jury as to Miller's duty to Sorenson, and Sorenson offered proof that Miller breached that duty and that its breach was a cause of the accident. The cross-appeal is entirely without merit.
 
 III. Conclusion
 
 25
 For the foregoing reasons, we AFFIRM the District Court's decision, and the jury verdict stands.